**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CIVIL ACTION NO:**

MAYTE FIGUEREDO-CHAVEZ,
individually and on Behalf of All Others
Similarly Situated,

      Plaintiffs,                           JURY TRIAL DEMANDED

vs.

RCI HOSPITALITY HOLDINGS, INC.,
MIAMI GARDENS SQUARE ONE, INC.,
and ERIC LANGAN, individually,

      Defendants.
_____/

**PLAINTIFF'S CLASS AND COLLECTIVE ACTION COMPLAINT**

Congress designed the Fair Labor Standards Act of 1938 ("FLSA") to remedy situations "detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). To achieve this broad remedial purpose, the FLSA establishes minimum wage and overtime requirements for covered employees. 29 U.S.C. §§ 206, 207. These provisions, coupled with an effective integrated cause of action within the FLSA, prevent employers from pilfering the wages rightfully earned by their employees. *See, Billingsley v. Citi Trends, Inc.*, 13-12561, 2014 WL 1199501 (11th Cir. Mar. 25, 2014).

1.     This case implicates an adult entertainment club which goes by the trade name of "Tootsie's Cabaret." The entities and employers implicated are RCI HOSPITALITY HOLDINGS, INC., MIAMI GARDENS SQUARE ONE, INC., and ERIC LANGAN ("Defendants").

2.      Defendants have a longstanding policy of misclassifying their employees as independent contractors.  Moreover, Defendants have persisted in their willful violation of state and federal wage and hour laws notwithstanding the fact that they have previously been sued in prior class actions asserting the same or similar factual allegations.

3.      Defendants required and/or permitted Plaintiff MAYTE FIGUEREDO-CHAVEZ ("Plaintiff") to work as exotic "entertainers" and/or dancers at their adult entertainment club in excess of forty (40) hours per week, but refused to compensate them at the applicable minimum wage and overtime rate.   In fact, Defendants refused to compensate Plaintiff at all for the hours she worked.  Plaintiff's only compensation was in the form of tips from club patrons.

4.      Defendants' conduct violates the FLSA and Article X, Section 24 of the Florida Constitution which requires non-exempt employees, such as Plaintiff, to be compensated at a rate of at least the applicable Florida minimum wage for all hours/weeks worked, and violates the FLSA which requires that non-exempt employees be paid time and a half for all overtime hours worked.

5.      Furthermore, Defendants' practice of failing to pay tipped employees pursuant to 29 U.S.C. § 203(m), violates the FLSA's minimum wage provision as does Defendants' practice of siphoning away those tips to distribute to non-tip eligible employees.  *See* 29 U.S.C. §§ 203, 206.

6.      Plaintiff brings a collective action to recover the unpaid wages owed to her and all other similarly situated employees, current and former, of Defendants who worked at Tootsies Cabaret, at any time during the three year period before this Complaint was filed up to the present ("Collective Members").  These Class Members should be informed of the pendency of

this action and apprised of their rights to join in the manner envisioned by *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989) and its progeny.

7.      Plaintiff complains on behalf of herself, and a class of other similarly situated current and former "entertainer" employees of the Defendants, pursuant to Fed.R.Civ.P.23, that they are entitled to back wages from Defendants for hours/weeks of work for which they did not receive at least the Florida minimum wage, in violation of Article X, Section 24 of the Florida Constitution ("Florida Minimum Wage Claims").

## SUBJECT MATTER JURISDICTION AND VENUE

8.      This Court has jurisdiction over the subject matter of this action under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

9.      This Court has jurisdiction over the Florida Minimum Wage Claims pursuant to 28 U.S.C. §1367, because the acts and omissions that give rise to Plaintiff's FLSA claims are the same acts and omissions that give rise to Plaintiff's Florida Minimum Wage Claims.

10.      Venue is proper in the Southern District of Florida because a substantial portion of the events forming the basis of this suit occurred in this District, and Defendants' headquarters are located in this District.

## PARTIES AND PERSONAL JURISDICTION

11.      Plaintiff Mayte Figueredo-Chavez is a citizen of the State of Florida.

12.      The Collective Members are all of Defendants' current and former exotic entertainers who worked at Tootsie's Cabaret located in Miami, Florida at any time during the three (3) years prior to the filing of Plaintiff's Original Complaint up to the present.

13.     The Class Members are all of Defendants' current and former exotic entertainers who worked at Tootsie's Cabaret located in Miami, Florida at any time during the five (5) years prior to the filing of Plaintiff's Original Complaint up to the present.

14.     Defendant RCI Hospitality Holdings, Inc. is a foreign corporation doing business in Miami for the purpose of accumulating monetary Profit.

15.     Defendant RCI Hospitality Holdings, Inc., is a Texas Corporation with its principal address in Houston, Texas, and thus deemed to be a citizen of the State of Texas.

16.     Defendant Miami Gardens Square One, Inc. is wholly owned and operated by Defendant RCI Hospitality Holdings, Inc., and as such, Defendant RCI Hospitality Holdings, Inc. is ultimately responsible for any liability incurred by Miami Gardens Square One, Inc.

17.     Miami Gardens Square One, Inc. is a domestic corporation doing business in Florida for the purpose of accumulating monetary profit.

18.     Defendant Eric Langan is an individual and is a citizen of the State of Texas.

19.     This Court has personal jurisdiction over this Defendant Eric Langan because he is an Officer and Director of RCI Hospitality Holdings, Inc. and Miami Gardens Square One, Inc. and had sufficient contacts with the Southern District of Florida both individually and as an Officer of Defendants at all times relevant hereto.

## COVERAGE

20.     In an FLSA case, the following elements must be met.  "(1) [plaintiff] is employed by the defendant, (2) the defendant engaged in interstate commerce, and (3) the defendant failed to pay [plaintiff] minimum or overtime wages." *Freeman v. Key Largo Volunteer Fire & Rescue Dept., Inc.,* 494 Fed. Appx. 940, 942 (11th Cir. 2012) *cert. denied,* 134 S. Ct. 62, (U.S. 2013).

21.     Article X, Section 24 of the Florida Constitution incorporates the definitions from the FLSA.

## EMPLOYMENT RELATIONSHIP

22.     "To be 'employed' includes when an employer 'suffer[s] or permit[s] [the employee] to work.'" *Id.* at 942 (citing 29 U.S.C. § 203(g)). "To determine if an individual is an employee, 'we look at the economic reality of all the circumstances' surrounding the activity." *Id.* (citing *Brouwer,* 139 F.3d at 819). "We refer to this test as the 'economic reality' test." *Id.* (citing *Villarreal v. Woodham,* 113 F.3d 202, 205 (11th Cir.1997)). "The touchstone of the economic reality test is the alleged employee's economic dependence on the employer." *Id.*

23.     Here, Defendants had the power to hire and fire Plaintiff.

24.     Defendants hold an audition for entertainers looking to be hired at the club. Defendants ask that the entertainers "bring proper dancing attire" to the auditions or submit a picture if applying online.

25.     Defendants controlled Plaintiff's work schedule.

26.     Defendants scheduled Plaintiff and other entertainers to certain shifts.

27.     Defendants required Plaintiff and other entertainers to work a certain number of days during the week.

28.     Defendants required Plaintiff and other entertainers to work specific days of the week each week.

29.     Defendants provided training, if needed, through an orientation program that taught the entertainers what they needed to know in order to work at Tootsie's Cabaret.

30.     Defendants required Plaintiff and other dancers to wear certain clothing on certain days of the week.

31.     Defendants required Plaintiff and other dancers to sell certain promotional items including items such as t-shirts bearing the Defendants' logo.

32.     Defendants determined the rate and the method of payment of all dancers including Plaintiff.

33.     Defendants set the price for their customers to pay dancers for side table dances and lap dances.

34.     Defendants set a price for their customers to pay entertainers for champagne room dances.

35.     Defendants required Plaintiff and all other entertainers to pay "house fees" depending on the day and shift the dancer was working.

36.     Defendants required Plaintiff and all other entertainers to tip out certain employees at the end of their shift including but not limited to the DJ, the House Mom, wait staff, floor men, valet, security, and managers.

37.     Entertainers are an integral part of Defendants' strip clubs.

38.     Plaintiff and all other entertainers' job duties consisted of dancing in designated areas and performing dances for Defendants' customers at the club.  These job duties require little to no skill.[1]

---

[1] *See, Freund v. Hi-Tech Satellite, Inc.,* 185 Fed. Appx. 782, 783 (11th Cir. 2006) ([C]ourts must determine whether, as a matter of economic realit[y], an individual is an employee or an independent contractor in business for himself. Several factors guide this inquiry: (1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers; (4) whether the service rendered requires a special skill; (5) the degree of permanency and duration of the working relationship; (6) the extent to which the service rendered is an integral part of the alleged employer's business.") (internal citations omitted); *see also*, *Clincy v. Galardi S. Enterprises, Inc.,* 808 F. Supp. 2d 1326, 1343 (N.D. Ga. 2011) (applying economic reality test and finding exotic dancers were employees not independent contractors).

39.     Defendants maintained some records regarding the time Plaintiff and all other entertainers arrived and left the club.

40.     At all material times, Defendants have been employers within the meaning of 3(d) of the FLSA. 29 U.S.C. § 203(d).

41.     Moreover, the FLSA defines the term "employer" broadly to include "any person acting directly or indirectly in the interest of an employer in relation to any employee." 29 U.S.C. § 203(d).

42.     The statutory definition of "employer" includes corporate officers, participating shareholders, supervisors, managers, or other employees where that individual exercises some supervisory authority over employees and is responsible in whole or in part for the alleged violation. *See id.*; *Reich v. Circle C. Investments, Inc.*, 998 F.2d 324, 329 (5th Cir. 1993); *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 971-72 (5th Cir. 1984).

43.     Defendant Eric Langan is the President and Director of RCI Hospitality Holdings, Inc.

44.     Defendant Eric Langan is the President and Director of Miami Gardens Square One, Inc.

45.     Defendant Eric Langan is involved in the day-to-day business operation of Tootsie's Cabaret.

46.     Defendant Eric Langan has responsibility for the supervision of the entertainers at Tootsie's Cabaret.

47.     Defendant Eric Langan is responsible for the compensation or lack thereof paid to entertainers at Tootsie's Cabaret.

48.     Defendant Eric Langan has the authority to hire and fire employees, the authority to direct and supervise the work of employees, the authority to sign on the business's checking accounts, including payroll accounts, and the authority to make decisions regarding employee compensation and capital expenditures.

49.     Additionally, Defendant Eric Langan was responsible for the day-to-day affairs of the club.

50.     In particular, Defendant Eric Langan was responsible for determining whether the club complied with applicable wage and hour laws, including but not limited to Article X, Section 24 of the Florida Constitution.

51.     As such, Defendant Eric Langan is the employer of the Plaintiffs and Class Members within the meaning of 3(d) of the FLSA and Article X, Section 24 of the Florida Constitution, and is jointly, severally, and liable for all damages.

## COVERAGE

52.     At all material times, Defendants have been an enterprise within the meaning of 3(r) of the FLSA. 29 U.S.C. § 203(r), and Article X, Section 24 of the Florida Constitution.

53.     At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of Article X, Section 24 of the Florida Constitution because they have had employees engaged in commerce. 29 U.S.C. § 203(s)(1).

54.     Specifically, Defendants' employees have sold goods—such as alcoholic beverages and a variety of foods—that have been moved or produced in interstate commerce to Defendants' patrons.  Additionally, Defendants' employees, including Plaintiff, have handled materials that have been moved or produced in interstate commerce, which were used in the course of Defendants' business operations.

55.     Defendants advertise on the internet, own clubs in multiple states which they advertise together on their website, process credit cards from out of state patrons, communicate via mail, email, and telephone with their clubs outside of the state of Florida, and sell their merchandise across state lines.

56.     Furthermore, Defendants have had, and continue to have, an annual gross business volume in excess of the statutory standard.

57.     At all material times, Plaintiff and other similarly situated individuals were employees who engaged in commerce or in the production of goods for commerce as required by 29 USC § 206-207 and Article X, Section 24 of the Florida Constitution.

## WAGE VIOLATIONS

58.     Defendants classify Plaintiff and all other entertainers as independent contractors.

59.     Defendants' classification of Plaintiff and all other entertainers as independent contractors is erroneous, because Plaintiff and all other entertainers are Defendants' employees.

60.     Defendants failed to pay Plaintiff and all other entertainers they hire any compensation whatsoever.

61.     Plaintiff and those similarly situated routinely worked in excess of 40 hours per week, but like their hours under 40, Defendants failed to pay Plaintiff anything whatsoever for such overtime hours worked.

62.     The only money Plaintiff received was tips received directly from Defendants' customers.

63.     Defendants siphoned Plaintiff and all other entertainers' tips by requiring them to share their tips with other employees who are not eligible to participate in a tip pool.

## FACTS

64.    Plaintiff and Class Members have all been victimized by Defendants' common policy and plan to violate their rights under the FLSA and Article X, Section 24 of the Florida Constitution and by denying them minimum wage, proper overtime, and the tips they lawfully earned.

65.    Defendants operate an adult entertainment club located at 150 NW 183rd Street, Miami Gardens, Florida ("Tootsie's Cabaret").

66.    Defendants employ exotic entertainers at Tootsie's Cabaret located at 150 NW 183rd Street, Miami Gardens, Florida.

67.    Plaintiff Mayte Figueredo-Chavez is a former exotic entertainer at Defendants' adult entertainment club: Tootsie's Cabaret.

68.    Plaintiff Mayte Figueredo-Chavez worked on a regular basis for Defendants' club.

69.    From approximately 2009 until approximately May 11, 2018, Plaintiff Mayte Figueredo-Chavez danced at Tootsie's Cabaret in Miami, Florida.

70.    Therefore, Plaintiff Mayte Figueredo-Chavez has first-hand personal knowledge of the pay violations at Tootsie's.

71.    The exotic entertainers are compensated exclusively through tips received from Defendants' customers.

72.    Defendants did not pay the entertainers compensation for any hours worked at their establishment.

73.    Defendants charged the entertainers certain fees per shift worked.

74. Defendants charged the entertainers a "house fee" depending on the time they arrived to work.

75. Defendants also required the entertainers to share their tips with employees who do not customarily and regularly receive tips, including the disc jockeys and the managers.

76. Defendants illegally classified the entertainers as independent contractors.

77. At all times, the entertainers were employees of Defendants as that term is defined by the FLSA, Article X, Section 24 of the Florida Constitution, and relevant case law.

78. Defendants hired, fired and supervised the entertainers.

79. Defendants also set the schedule for the entertainers.

80. Defendants controlled the details of the entertainers' jobs, including setting the prices to charge customers for dances and imposing limitations on how to interact with the clubs' customers.

81. Defendants also controlled the entertainers' appearances with respect to their attire and makeup.

82. Defendants disciplined the entertainers for not following club rules.

83. Defendants tracked the time and days the entertainers worked just as is common for typical employer-employee relationships.

84. In addition, Defendants instructed the entertainers about when, where, and how the entertainers were to perform their work.

85. The following further facts demonstrate the entertainers' status as employees:

a) Defendants had the sole right to hire and fire the entertainers;

b) Defendants require dancers to complete an employee application as a prerequisite to their employment;

c)      Defendants made the decision not to pay overtime;

d)      Defendants made the decision not to compensate at the applicable minimum wage rate;

e)      Defendants provided the entertainers with music equipment and a performing stage;

f)      Defendants controlled the entertainers' music;

g)      The dancers have made no financial investment with Defendants' business;

h)      The dancers were hired as permanent employees and have worked for Defendants for years;

i)      Defendants supervised the entertainers; and

j)      Defendants scheduled entertainers and as such had sole control over their opportunity for profit.

86.     Defendants misclassified Plaintiffs and Class Members as independent contractors to avoid their obligations to pay them pursuant to the FLSA and Article X, Section 24 of the Florida Constitution.

87.     Plaintiff and Class Members are not exempt from the minimum wage requirements under the FLSA and/or Article X, Section 24 of the Florida Constitution.

88.     Defendants' method of paying Plaintiff or lack thereof in violation of the FLSA and Article X, Section 24 of the Florida Constitution was willful and was not based on a good faith and reasonable belief that its conduct complied with the FLSA or Article X, Section 24 of the Florida Constitution.

89.     Defendants misclassified Plaintiff with the intent to avoid paying her and other entertainers in accordance to the FLSA or Article X, Section 24 of the Florida Constitution.

90.     Defendants have been in the exotic dancing industry for years and are familiar with the long line of federal cases holding that entertainers in this industry are employees as that term is defined by the FLSA and parallel state wage and hour laws.

91.     Further, at all material times, Defendants have operated as a "single enterprise" within the meaning of 3(r)(1) of the FLSA and Article X, Section 24 of the Florida Constitution. 29 U.S.C. § 203(r)(1).  That is, Defendants perform related activities through unified operation and common control for a common business purpose. *See Brennan v. Arnheim and Neely, Inc*., 410 U.S. 512, 515 (1973); *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 914–15 (9th Cir. 2003).

92.     All Defendants have a common business purpose of for profit adult entertainment.

93.     The individually named Defendant keeps employment records for Tootsie's Cabaret.

94.     The individually named Defendant has ultimate authority regarding hiring and firing employees at Tootsie's Cabaret.

95.     The individually named Defendant created and implemented companywide policy of misclassifying exotic entertainers as independent contractors at Tootsie's Cabaret, and all other strip clubs operated by Defendant, RCI Hospitality Holdings, Inc., including Rick's Cabaret, Vivid Cabaret, Club Onyx, Jaguars Club, XTC Cabaret, and Bombshells.

96.     Defendants operate a strip club under the assumed name "Tootsie's Cabaret." Indeed, they advertise themselves as such on their website.

## THE DESIGNATED ARBITRATION FORUM IS UNAVAILABLE

97.     Prior to commencing this action, Plaintiff filed a statement of claim with the American Arbitration Association ("AAA") pursuant to an arbitration agreement with Tootsie's Cabaret ("Arbitration Agreement") designating AAA as the arbitration forum.

98.     The designation of AAA as arbitration forum to is an integral provision of the Arbitration Agreement since it provides that "any and all disputes…will be subject to binding arbitration *governed and settled by an impartial independent appointed by the American Arbitration Association, Florida branch…*" and references two set of AAA rules to be used to resolve disputes.  Arbitration Agreement at § 15.

99.     Pursuant to AAA policies and rules: "A dispute arising out of an employer-promulgated plan will be administered under the AAA's Employment Arbitration Rules and Mediation Procedures."  *See* AAA Commercial Rules at p. 10.

100.    Tootsie's Cabaret refused to follow AAA's policies and pay their portion of the arbitration filing fee pursuant to the Employment Arbitration Rules that cap an individual's filing fee at $300.

101.    Tootsie's Cabaret also refused to even pay half of the filing fee (as provided in the Arbitration Agreement) so AAA could appoint a special master to determine whether the fee allocation dispute.

102.    As a result of Tootsie Cabaret's failure to follow AAA's policies and rules, the Arbitration Agreement's designated forum is unavailable to Plaintiff and other similarly situated employees as AAA has refused to administer arbitrations with Tootsie's Cabaret.  *See* Letter from AAA, dated February 12, 2021; *see also Inetianbor v. CashCall, Inc.*, 768 F.3d 1346, 1351

(2014) (an arbitration forum is integral and cannot be substituted by the court where agreement "selects not just the rules of procedure, but also the arbitral forum").

103.     Tootsie's also waived their right to enforce the Arbitration Agreement because they declined AAA's offer for them to pay their portion of the filing fees as provided in the Arbitration Agreement so AAA could appoint a special master to hear the filing fee dispute. *See Freeman v. SmartPay Leasing, LLC*, 771 Fed. App'x. 926 (2019) ("In sum, SmartPay acted inconsistently with its contractual right to arbitrate when it refused to pay the initial filing fee, as expressly required by the arbitration agreement.  SmartPay therefore waived its right to arbitration by failing to pay arbitration fees.") (citation omitted).

104.     AAA is not a party to the Arbitration Agreement and there is no ability to compel AAA, over its objection, to administer Plaintiff's claims in violation of its policies and rules.

105.     Plaintiff has been prejudiced by Tootsie Cabaret's failure to abide by AAA's policies by, among other things, delaying the resolution of the matter, and requiring her to incur the cost to file the arbitration and other arbitration-related costs.

## I.     COUNT ONE: VIOLATION OF 29 U.S.C. § 207

106.     Plaintiff incorporates the allegations contained paragraphs 11-105.

107.     Defendants' practice of failing to pay Plaintiff and Class Members time-and-a-half rate for hours in excess of forty (40) per workweek violates the FLSA. 29 U.S.C. § 207.

108.     None of the exemptions provided by the FLSA regulating the duty of employers to pay overtime at a rate not less than one and one-half times the regular rate at which its employees are employed are applicable to Defendants or Plaintiff.

## II.     COUNT TWO: VIOLATION OF 29 U.S.C. § 206

109.     Plaintiff incorporates the allegations contained paragraphs 11-105.

110.    Defendants' practice of failing to pay Plaintiff and Class Members at the required minimum wage rate violates the FLSA.  29 U.S.C. § 206.  In fact, Defendants do not compensate the exotic entertainers whatsoever for any hours worked.

111.    None of the exemptions provided by the FLSA regulating the duty of employers to pay employees for all hours worked at the required minimum wage rate are applicable to Defendants or Plaintiff.

112.    Defendants failed to keep adequate records of Plaintiff's and Class Members' work hours and pay in violation of section 211(c) of the FLSA.  *See* 29 U.S.C. § 211(c).

113.    Federal law mandates that an employer is required to keep for three (3) years all payroll records and other records containing, among other things, the following information:

a)    The time of day and day of week on which the employees' work week begins;

b)    The regular hourly rate of pay for any workweek in which overtime compensation is due under section 7(a) of the FLSA;

c)    An explanation of the basis of pay by indicating the monetary amount paid on a per hour, per day, per week, or other basis;

d)    The amount and nature of each payment which, pursuant to section 7(e) of the FLSA, is excluded from the "regular rate";

e)    The hours worked each workday and total hours worked each workweek;

f)    The total daily or weekly straight time earnings or wages due for hours worked during the workday or workweek, exclusive of premium overtime compensation;

g)      The total premium for overtime hours.  This amount excludes the straight-time earnings for overtime hours recorded under this section;

h)      The total additions to or deductions from wages paid each pay period including employee purchase orders or wage assignments;

i)      The dates, amounts, and nature of the items which make up the total additions and deductions;

j)      The total wages paid each pay period; and

k)      The date of payment and the pay period covered by payment.

29 C.F.R. 516.2, 516.5.

114.    Defendants have not complied with federal law and have failed to maintain such records with respect to Plaintiff and Class Members.  Because Defendants' records are inaccurate and/or inadequate, Plaintiff and Class Members can meet their burden under the FLSA by proving that they, in fact, performed work for which they were improperly compensated, and produce sufficient evidence to show the amount and extent of the work "as a matter of a just and reasonable inference."  *See, e.g.*, *Anderson v. Mt. Clemens Pottery Co.¸* 328 U.S. 680, 687 (1946).

###     III.    COUNT THREE: VIOLATION OF ARTICLE X, SECTION 24 OF THE FLORIDA CONSTITUTION

115.    Plaintiff incorporate the allegations contained paragraphs 11-105.

116.    Plaintiff and those similarly situated employees, are/were entitled to be paid at least the Florida minimum wage for each hour/week worked during employment with Defendants.

117.    Specifically, Plaintiff, and those similarly situated employees, was not paid the proper minimum wage, as required by Article X, Section 24 of the Florida Constitution.

118.    Defendants willfully failed to pay Plaintiffs, and those similarly situated employees, minimum wages for one or more weeks during Plaintiffs' employment contrary to Article X, Section 24 of the Florida Constitution.

119.    Although such prerequisites are unconstitutional, Plaintiff have complied with all statutory prerequisites to bringing his claim pursuant to Article X, Section 24 of the Florida Constitution.

120.    Specifically, on September 13, 2018,[2] Plaintiff notified Defendants pursuant to Fla. Stats. § 448.110 of her intention to initiate an action to recover unpaid minimum wages, and on or around December 20, 2018, provided Defendants with a calculation of the unpaid wages to which she was entitled.

121.    More than 15 days have elapsed since Plaintiff service of her notice on Defendants, and Defendants have failed to make payment to Plaintiff.

122.    As a direct and proximate result of Defendants' deliberate underpayment of wages, Plaintiff, and those similarly situated employees, has been damaged in the loss of minimum wages for one or more weeks of work with Defendants.

123.    Plaintiff is entitled to an award of damages in an amount equal to the relevant Florida Minimum Wage, and an equal amount as liquidated damages.

124.    Plaintiff is entitled to an award of reasonable attorneys' fees and costs, pursuant to Article X, Section 24 of the Florida Constitution.

---

[2]      The parties executed a tolling agreement effective as of September 13, 2018 as to the FLSA claims of Plaintiff, along with specific class members, and as such the FLSA claims of these individuals, including Plaintiff, relate back to September 13, 2015.

## <u>COLLECTIVE ACTION ALLEGATIONS</u>

125.    As part of their regular business practices, Defendants have intentionally, willfully and repeatedly harmed Plaintiff and Collective Members by engaging in a pattern, practice, or policy of violating the FLSA on a class wide basis, as described above.

126.    Although Defendants permitted and/or required Collective Members to work in excess of forty (40) hours per workweek, Defendants have denied them full compensation for their hours worked over forty.  Defendants have also denied them full compensation at the federally mandated minimum wage rate.

127.    Collective Members perform or have performed the same or similar work as Plaintiff. In particular, Plaintiff and Collective Members all worked as exotic entertainers under the same conditions and subject to the same violations of the FLSA.

128.    Many Collective Members regularly work or have worked in excess of forty (40) hours during a workweek.

129.    Defendants have classified and continue to classify Class Members as independent contractors.

130.    Collective Members are not exempt from receiving overtime pay and/or minimum wage at the federally mandated minimum wage rate under the FLSA.

131.    As such, Collective Members are similar to Plaintiff in terms of job duties, pay structure, misclassification as independent contractors and/or the denial of overtime and minimum wage.

132.    Defendants' failure to pay overtime compensation and hours worked at the minimum wage rate required by the FLSA results from generally applicable policies or practices, and does not depend on the personal circumstances of the Collective Members.

133.     The experiences of Plaintiff, with respect to her pay, are typical of the experiences of Collective Members.

134.     The experiences of Plaintiff, with respect to her job duties, are typical of the experiences of Collective Members.

135.     The specific job titles or precise job responsibilities of each Collective Member does not prevent collective treatment.

136.     All Collective Members, irrespective of their particular job requirements, are entitled to overtime compensation for hours worked in excess of forty during a workweek.

137.     All Collective Members, irrespective of their particular job requirements, are entitled to compensation for weeks/hours worked at the federally mandated minimum wage rate.

138.     Although the exact amount of damages may vary among Collective Members, the damages for Collective Members can be easily calculated by a formula.   The claims of all Collective Members arise from a common nucleus of facts.   Liability is based on a systematic course of wrongful conduct by Defendants that caused harm to all Collective Members.

139.     The Plaintiff and the Collective Members held the same job title: Dancers and/or Entertainers.

140.     The Defendants have classified all of its entertainers as independent contractors from May 2016 to present.

141.     The individually named Defendants instituted, permitted, and/or required the policy and practice of classifying all exotic entertainers at Tootsie's Cabaret as independent contractors.

142.     The individually named Defendants instituted, permitted, and/or required the policy and practice of charging all exotic entertainers at Tootsie's Cabaret a house fee.

143.    The individually named Defendants instituted, created, and/or permitted the policy and practice of requiring all dancers and/or exotic entertainers at Tootsie's Cabaret to tip out staff including the DJ.

144.    As such, the class of similarly situated Plaintiff is properly defined as follows:

**The Class Members are all of Defendants' current and former exotic entertainers who worked at Tootsie's Cabaret at any time from May 6, 2018 up to the present.**

## CLASS ACTION ALLEGATIONS

145.    Plaintiff sues on her behalf and on behalf of a class of persons under Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

146.    Plaintiff brings her Florida Minimum Wage Claims on behalf of all persons who were employed by Defendants at any time since May 6, 2016, to the entry of judgment in this case (the "Class Period"), who were "entertainer" employees and who have not been paid at least the applicable Florida Minimum Wage for hours/weeks worked, as required, in violation of Article X, Section 24 of the Florida Constitution (the "Class").

147.    The persons in the Class identified above are so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendants, upon information and belief, there are between 100 and 500 members of the Class during the Class Period.

148.    The claims of Plaintiff are typical of the claims of the Class, and a class action is superior to other available methods of fair and efficient adjudication of the controversy - particularly in the context of wage and hour litigation where individual plaintiffs lack the

financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

149.    The Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

150.    Specifically, Defendants illegally misclassified all of their exotic entertainer employees, including Plaintiffs as independent contractors and failed to pay them minimum wages as mandated by Article X, Section 24 of the Florida Constitution.

151.    Application of this policy or practice does/did not depend on the personal circumstances of Plaintiff or those joining this lawsuit.   Rather, the same policy or practice which resulted in the non-payment of minimum wages to Plaintiff applied and continues to apply to all class members.   Accordingly, the class members are properly defined as:

**All of Defendants' current and former exotic entertainers who worked at Tootsie's Cabaret at any time during the five (5) years before the Original Complaint was filed up to the present.**

152.    Plaintiff is committed to pursuing this action and has retained competent counsel experienced in employment law and class action litigation.

153.    Plaintiff has the same interests in this matter as all other members of the class and Plaintiffs' claims are typical of the Class.

154.    There are questions of law and fact common to the Class which predominate over any questions solely affecting the individual members of the Class, including but not limited to:

a)      Whether the Defendants employed the members of the Class within the meaning of Article X, Section 24 of the Florida Constitution;

b)      whether the Defendants failed to keep true and accurate time records for all  hours worked by Plaintiff and members of the Class;

c)      what proof of hours worked is sufficient where employers fail in their duty to maintain time records;

d)      whether Defendants misclassified their exotic entertainer employees as independent contractors;

e)      whether Defendants failed and/or refused to pay the members of the Class at least the Florida Minimum Wage in one of more workweeks;

f)      whether the Defendants are liable for all damages claimed hereunder, including but not limited to, costs, disbursements and attorney's fees; and

g)      whether the Defendants should be enjoined from such violations of Article X, Section 24 of the Florida Constitution in the future.

## **DAMAGES SOUGHT**

155.     Plaintiff and Class Members are entitled to recover compensation for the hours/weeks they worked for which they were not paid at least the Florida-mandated minimum wage rate.

156.     Plaintiff and Class Members are also entitled to all of the misappropriated funds, including all funds that were charged as fees and penalties, and all tips that were taken.  Without repayment of such fees, Plaintiff and Class Members will not have been paid minimum wage and overtime in accordance Article X, Section 24 of the Florida Constitution.

157.     Plaintiff and Class members are also entitled to an amount equal to all of their unpaid wages and fees as liquidated damages.  Article X, Section 24 of the Florida Constitution.

158.    Plaintiff and the Class Members are entitled to recover their attorney's fees and costs as required by Article X, Section 24 of the Florida Constitution.

## JURY DEMAND

132.    Plaintiff and Class Members hereby demand trial by jury.

## PRAYER

For these reasons, Plaintiff and Class Members respectfully request that judgment be entered in their favor awarding the following relief:

a)    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the members of the Class and appointing Plaintiff and her counsel to represent the Class;

b)    Declaring, pursuant to 29 U.S.C. §§2201 and 2202, that the acts and practices complained of herein are in violation of the maximum hour and minimum wage provisions of the FLSA;

c)    All unpaid wage at the Florida mandated minimum wage rate;

d)    All misappropriated tips;

e)    All misappropriated funds that were labeled as fees or otherwise;

f)    An equal amount of all owed wages and misappropriated funds and tips as liquidated damages as allowed under Article X, Section 24 of the Florida Constitution;

g)    Reasonable attorney's fees, costs and expenses of this action as provided by Article X, Section 24 of the Florida Constitution;

h)    Such other relief to which Plaintiff and Class Members may be entitled, at law or in equity.

Dated: May 6, 2021

Respectfully submitted,

*/s/ Andrew R. Frisch*
Andrew R. Frisch
FL Bar No. 27777
Bryan Arbeit
FL Bar No. 1010329
Morgan & Morgan, P.A.
8151 Peters Road, Suite 4000
Plantation, FL 33324
Tel: (954) WORKERS; Fax: (954) 327-3013
E-mail: afrisch@forthepeople.com
E-mail: barbeit@forthepeople.com

Brett R. Cohen, Esq. *(Pro Hac Vice Forthcoming)*
**LEEDS BROWN LAW, P.C.**
One Old Country Road, Suite 347
Carle Place, NY 11514
Tel: (516) 873-9550
bcohen@leedsbrownlaw.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 6, 2021, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF filing system, which I understand will send notice of same

to all counsel and parties of record.

*/s/ Andrew R. Frisch*
Andrew R. Frisch