**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CIVIL ACTION NO: 1:21-cv-21733-KMM**

**MAYTE FIGUEREDO-CHAVEZ,**
**individually and on Behalf of All**
**Others Similarly Situated,**

    **Plaintiffs,**

vs.

**RCI HOSPITALITY HOLDINGS, INC.,**
**MIAMI GARDENS SQUARE ONE, INC.,**
**and ERIC LANGAN, individually,**

    **Defendants**
_____/

**PLAINTIFF'S *EXPEDITED* MOTION TO CONDITIONALLY CERTIFY COLLECTIVE ACTION AND FACILITATE NOTICE TO PUTATIVE COLLECTIVE MEMBERS AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

Plaintiff, MAYTE FIGUEREDO-CHAVEZ ("Plaintiff" or "Figueredo-Chavez") respectfully submits this motion seeking an Order conditionally certifying this case to proceed as a collective action pursuant to Section 16(b) of the Fair Labor Standards Act of 1938, as amended 29 U.S.C §201 *et seq.*, (hereinafter the "FLSA"), and permitting her to send Notice of the instant lawsuit to similarly situated current and former adult entertainers ("Entertainers") who have worked for Defendants at Tootsie's Cabaret (Defendants collectively referred to as "Defendants" or "Tootsie's") within the three years prior to the Court's order granting conditional certification. Plaintiff files this motion on an expedited basis and respectfully requests a ruling on this Motion as soon as possible since the statute of limitations continue to run for putative collective members who are not given notice of their right to opt-in to the collective action. *See Grayson v. K-Mart Corp.,* 79 F. 3d 1086, 1106 (11th Cir. 1996). The form

1

of the proposed Notice and Consent Forms are attached hereto as **EXHIBITS A** and **B**.

## MEMORANDUM OF LAW

I.     **FACTUAL BACKGROUND**

"Tootsie's Cabaret is the world's largest strip club" with "Over 300 Beautiful Entertainers." *See* Excerpt from Tootsie's website, http://www.tootsiescabaret.com/aboutus (last accessed July 23, 2021), attached hereto as **EXHIBIT C**. To operate the world's largest strip club, Defendants hired exotic dancers like Plaintiff and the putative collective members to provide adult entertainment to customers (referred to herein as "Entertainers"). *See* Declarations attached collectively as **EXHIBIT D**. *See id.* At all relevant times, Tootsie's Cabaret controlled or supervised nearly all aspects of an Entertainer's work, including creating house rules for Entertainers to follow and instructing the Entertainers about when, where, and how the entertainers were to perform their work and interact with customers. If any of the Entertainers did not follow the rules set by Tootsie's Cabaret, they would be disciplined, fined or terminated. Defendants also exerted significant control over the work of Entertainers through, *inter alia*, having the sole right to hire and fire Entertainers; requiring Entertainers to complete an employee application as a prerequisite to employment; making the decision not to pay Entertainers overtime or compensate them the applicable minimum wage rate; providing Entertainers with equipment and a performing stage; controlling advertising and marketing for the strip club; controlling the music; controlling what customers accessed the club; supervising the Entertainers; and enforcing the house rules. *Id.* Tootsie's tracked the hours that Entertainers worked and would fine them if they arrived late or left early for their scheduled shifts. *Id.* The Entertainers did not make an independent financial investment to work at Tootsie's Cabaret and had no ability to hire or manage their own employees. *Id.* Tootsie Cabaret even maintained an

orientation program that taught Entertainers what they needed to know in order to work at Tootsie's Cabaret and there was no technical or specialized skills needed to work at Tootsie's Cabaret. *Id.* The working conditions of Plaintiff and the two opt-in plaintiffs[1] were similar to that of the other hundreds of Entertainers who worked for Defendants. *Id.*

Plaintiff respectfully requests that the Court authorize notice to all **former and current Entertainers who worked at Tootsie's Cabaret at any time within the three years prior to the Court's ruling on this Motion ("Putative Collective Class")** to inform these similarly situated Entertainers of their right to opt-in and join this action. For the reasons stated below, Plaintiff's motion for conditional certification should be granted.

## II.     APPLICABLE STANDARDS FOR COLLECTIVE ACTIONS

FLSA collective actions operate differently than the typical class action suits under Rule 23 of the Federal Rules of Civil Procedure. Under 29 U.S.C. § 216(b) of the FLSA, an employee belonging to a similarly situated class of plaintiffs must "opt-in" to the class by filing a written consent with the Court in order to be bound by the outcome of the case. Without signing and filing such an express consent, employees are not bound by the outcome of the litigation. *See id*. Conversely, in traditional Rule 23 class actions a plaintiff initiating a class action automatically represents every member of the class that has not expressly "opted-out."

In *Hoffman-La Roche, Inc. v. Sperling,* 493 U.S. 165 (1989), the Court ruled that not only did trial courts have authority to compel defendant-employers to provide names and addresses of potential plaintiffs through the pretrial discovery process, but that this authority also included

---

[1] The participation of the two opt-in plaintiffs is enough to satisfy the inquiry as to whether others "desire to join." *See Brasaus v. FreshPoint of S. Fla., Inc.,* No. 15-CV-61529-WPD, 2016 WL 7469979, at *2 (S.D. Fla. Feb. 12, 2016) (granting certification with two opt-ins having provided declarations, finding that "[s]uch a showing is sufficient at this stage to demonstrate that other employees desire to opt-in.").

3

sending court-authorized consent forms to potential plaintiffs. *See id.* There, the Court addressed the issue of whether the district court may play any role in prescribing the terms and conditions of communication from the named plaintiffs to the potential members of the class on whose behalf the collective action has been brought. *See id.* The Court determined that district courts have discretion in appropriate cases to implement 29 U.S.C. §216(b) by facilitating notice to potential plaintiffs. *See id.* at 486. This authority arises from the Court's broad discretionary power to manage the process of joining multiple parties in an orderly manner. *See id.*

Trial court involvement in the notice process is inevitable in cases with numerous plaintiffs where written consent is required by statute. Thus, it lies within the discretion of the trial court to begin its involvement early, at the point of the initial notice, rather than at some later time. *See id.* Court authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action. *See id.* at 487. Additionally, the benefits of the collective action provision of 29 U.S.C. §216(b), "depend on employees receiving accurate and timely notice concerning the pendency of the collective action so they can make informed decisions about whether to participate." *Id.* at 486.

### A. The Conditional Notice Standard is Lenient

Courts generally utilize a two-tiered approach to certification of an opt-in class pursuant to 29 U.S.C. §216(b). *See, e.g., Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260 (11th Cir. 2008) ("[W]e have sanctioned a two-stage procedure for district courts to effectively manage FLSA collective actions in the pretrial phase."); *Hipp v. Liberty Nat'l Life Ins. Co.,* 252 F.3d 1208, 1219 (11th Cir. 2001); *see also Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995); *see also Thiessen v. General Electric Capital Corp.,* 267 F.3d 1095 (10th Cir. 2001)(describing two-step method and affirming district court's use of it); *see also Gambo v.*

*Lucent Technologies*, 2005 WL 3542485 (N.D. Ill. Dec. 22, 2005); *see also Clarke v. Convergys Customer Management Group, Inc.,* 370 F.Supp.2d 601 (S.D. Tex. 2005); *see also Realite v. Ark Restaurants Corp.,* 7 F.Supp.2d 303 (S.D.N.Y. 1998). Under this two-tiered approach, the court makes an initial determination, based solely upon the pleadings and any affidavits, whether notice of the action should be given to potential class members. *See id.* at 1218. During Stage I notice proceedings, "[p]laintiffs need show only that their positions are similar, **_not identical_,** to the positions held by the putative class members." *Grayson v. K Mart Corp.,* 79 F.3d 1086, 1096 (11th Cir. 1996) (internal quotations and citations committed) (emphasis added).

Because the court has minimal evidence at this stage of the proceedings, this determination is made using a fairly lenient standard, and typically results in conditional certification of a representative class. *See Cameron-Grant v. Maxim Healthcare Services Inc.,* 347 F.3d 1240 (11th Cir. 2003)*; see also Pendelbury v. Starbucks Coffee Co.,* 2005 WL 84500, *3 (S.D. Fla. Jan. 3, 2005) (citing *Hipp*, 252 F.3d at 1218). Moreover, allowing plaintiffs and the putative class members to first proceed through notice and discovery is contemplated by the two tier approach. *See Leuthold v. Destination Am.,* 224 F.R.D. 462, 467 (N.D. Cal. 2004) ("The two-tier approach contemplates progression through the notice stage before reaching the more rigorous inquiry required to maintain the class. This is evident from the methods usually employed to decide the issues raised by the two tiers.").

  **B.**  **Plaintiff Demonstrates a Reasonable Basis for a Collective Action**

For purposes of defining the "similarly situated class" pursuant to 29 U.S.C. §216(b), a plaintiff must only demonstrate that the defined class is comprised of employees who are similarly situated to the named plaintiff with regard to the defendants' compensation practices. To satisfy the initial burden regarding notice under 29 U.S.C. § 216(b), "plaintiff[s] need only

5

show that their positions are similar, not identical, to the positions held by the putative class members." *Hipp*, 252 F. 3d at 1217.  *see also Pendlebury*, 2005 U.S. Dist. LEXIS 574, at *8-10 (store managers from two (2) Starbucks' locations in Broward County, Florida granted right to send notice to all similarly situated store managers **across the United States** who may have been misclassified as "exempt").  The "similarly situated" requirement of §216(b) is more elastic and less stringent than the requirements of Rule 23 (class actions), Rule 30 (joinder) and Rule 42 (severance).  *Hipp*, 252 F. 3d at 1219; *Pendlebury, supra*;  *see also White v. Osmose*, 204 F.Supp.2d 1309, 1315 (M.D. Ala. 2002).  A plaintiff merely must demonstrate a "reasonable basis" for a collective action.  *Hipp*, 252 F. 3d at 1219

As detailed in the factual background at pp. 2-3, all Entertainers at Tootsie's worked under similar conditions as Plaintiff and the two opt-in plaintiffs.  Thus, there are questions of law or fact common to all Entertainers who worked at Tootsie's Cabaret and their wage claims can be resolved collectively.  *See generally* Exhibit D.   Indeed, other courts have routinely found that wage claims of adult entertainers were suitable for collective certification.  *See e.g. Scarpino v. Imagination Indus., Inc.,* 2021 WL 1267270 (D. Neb. Apr. 6, 2021); *Esedebe v. Circle 2, Inc.*, 2021 WL 232595 (E.D. Va. Jan. 22, 2021); *Parker v. K&L Ent., Inc.*, 2020 WL 7491077 (E.D.N.C. Dec. 21, 2020); *Grove v. Meltech, Inc.*, 2020 WL 7133568 (D. Neb. Dec. 3, 2020), *reconsideration denied*, 2021 WL 106267 (D. Neb. Jan. 12, 2021); *Rosario v. 11343 Penrose Inc.*, 2020 WL 8812460 (C.D. Cal. Oct. 26, 2020); *Harris v. Diamond Dolls of Nevada, LLC*, 2020 WL 8771230 (D. Nev. Sept. 22, 2020); *Embry v. 4745 Second Ave. Ltd.*, 2020 WL 5579178 (S.D. Iowa Aug. 7, 2020); *Doe v. Banc, Jack & Joe, LLC*,  2020 WL 2832621 (D.N.J. June 1, 2020); *Harris v. 68-444 Perez, Inc.*, 2020 WL 6586312 (C.D. Cal. Apr. 23, 2020); *Rosebar v. CSWS, LLC*, 2020 WL 43015 (N.D. Ill. Jan. 3, 2020); *Desio v. Russell Rd. Food &

*Beverage, LLC,* 2017 WL 4349220 (D. Nev. Sept. 29, 2017); *Shaw v. Set Enterprises, Inc.*, 2016 WL 10593592 (S.D. Fla. Dec. 6, 2016); *Degidio v. Crazy Horse Saloon & Rest., Inc*, 2015 WL 5834280 (D.S.C. Sept. 30, 2015); *Eley v. Stadium Grp., LLC*, 2015 WL 5611331 (D.D.C. Sept. 22, 2015); *Guzman v. Three Amigos SJL, Inc.,* 117 F.Supp.3d 516 (S.D.N.Y. July 30, 2015); *Geter v. Galardi South Enterprises, Inc.,* 2015 WL 2384068 (S.D. Fla. May 19, 2015); *Romero v. ABCZ Corp.,* 2015 WL 2069870 (S.D.N.Y. April 28, 2015); *Jane Roes 1–2 v. SFBSC Management, LLC,* 77 F.Supp.3d 990 (N.D. Cal. 2015); *Kesley v. Entertainment USA, Inc.,* 67 F.Supp.3d 1061 (D. Ariz. 2014); *Dittus v. KEG, Inc.,* 2014 WL 6749183 (D.S.C. Dec. 1, 2014); *Coronado v. D.N.W. Houston, Inc.,* 2014 WL 6674292 (S.D. Tex. Nov. 24, 2014); *Espinoza v. Galardi South Enterprises, Inc.,* 2014 WL 5410307 (S.D. Fla. Oct. 23, 2014); *McFeeley v. Jackson Street Entertainment, LLC,* 47 F.Supp.3d 260 (D. Md. 2014); *Cox v. Entertainment USA of Cleveland, Inc.,* 2014 WL 4302535 (N.D. Ohio Aug. 29, 2014); *Carter v. Doll House II, Inc.,* 69 F.Supp.3d 1351 (N.D. Ga. 2014); *Verma v. 3001 Castor, Inc.,* 2014 WL 2957453 (E.D. Pa. June 30, 2014); *Stevenson v. Great American Dream, Inc.,* 2013 WL 6880921 (N.D. Ga. Dec. 31, 2013); *Hughes v. Burie,* 2014 WL 1572543 (N.D. Fla. April 18, 2014); *Hart v. Rick's Cabaret International, Inc.,* 967 F. Supp. 2d 901 (S.D.N.Y. 2013); *Cruthis v. Vision's,* 2013 WL 4028523 (E.D. Ark. Aug. 7, 2013); *Calder v. GGC–Baltimore, LLC,* 2013 WL 3441178 (D. Md. July 8, 2013); *Collins v. Barney's Barn, Inc.,* 2013 WL 1668984 (E.D. Ark. April 17, 2013); *Watson v. W.W.D., Inc.,* 2013 WL 1947365 (W.D. La. March 25, 2013); *Jones v. JGC Dallas LLC,* 2012 WL 6928101 (N.D. Tex. Nov. 29, 2012); *Nesselrodte v. Underground Casino & Lounge, LLC,* 2012 WL 4378163 (N.D. W.Va. Sept. 25, 2012); *Ruffin v. Entertainment of the Eastern Panhandle,* 2012 WL 761659 (N.D. W.Va. March 7, 2012); *D'Antuono v. C & G of Groton, Inc.,* 2011 WL 5878045 (D. Conn. Nov. 23, 2011); *Clincy v. Galardi South Enterprises,*

*Inc,* 808 F. Supp. 2d 1326 (N.D. Ga. 2011); *Thompson v. Linda And A, Inc.,* 779 F. Supp. 2d 139 (D.D.C. 2011); *Green v. Plantation of Louisiana, LLC,* 2010 WL 5256354 (W.D. La. Nov. 24, 2010); *In re Penthouse Executive Club Compensation Litigation,* 2010 WL 4340255 (S.D.N.Y. Oct. 27, 2010).

For conditional certification to be granted in cases arising under the FLSA, there is no requirement of "strict symmetry" or "absolute identity." *See Vondriska v. Premier Mortg. Funding, Inc.*, 564 F.Supp.2d 1330 (M.D. Fla. 2007) (For certification of collective action, under FLSA, to satisfy similarly situated requirement for opting in, plaintiffs must only demonstrate that their positions are similar, not identical, to the positions of the potential class plaintiffs). Rather, all that is required is a "reasonable basis." *Burks v. Equity Group Eufaula Div. LLC*, 2007 U.S. Dist. LEXIS 79416 (M.D. Ala. 2007) (further citation omitted); *see also Holt v. Rite Aid Corp.*, 333 F.Supp.2d 1265, 1270 (M.D. Ala. 2004) ("[P]laintiff must make some rudimentary showing of commonality between the basis for his claims and that of the potential claims of the proposed class, beyond the mere facts of job duties and pay provisions."); *Bradford v. Bed Bath & Beyond, Inc.*, 184 F. Supp. 2d 1342, 1346-51 (N.D. Ga. 2002) (granting certification where "Plaintiffs have made substantial allegations, supported by evidence, that Defendant failed to comply with the FLSA by failing to pay overtime compensation to non-exempt employees on a class-wide basis."). Further, "courts have held that Plaintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Kreher v. City of Atlanta*, 2006 WL 739572, at *3 (N.D. Ga. Mar. 20, 2006) (*citing Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)); *see also Thiebes v. Wal-Mart Stores, Inc.,* 1999 WL 1081357, at *2 (D. Or. Dec. 1, 1999) (plaintiffs need only some factual nexus that they and

the putative class were victims of a common policy or plan that violated the FLSA). Since all the Entertainers at Tootsie's Cabaret worked under similar working conditions and were subjected to the same wage practices, collective treatment is appropriate and more efficient than litigating separate actions.

### C. The "Merits" of Plaintiffs' Claim Are Not Considered When Determining Whether to Conditionally Certify and Issue Notice to Potential Opt-in Plaintiffs

Defendants' response to this Motion may be that the Defendants did not employ the Entertainers, or that they did not commit the wage and hour violations alleged. However, courts do not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be "similarly situated." *See Comer*, 454 F.3d at 548*; see also Kreher v. City of Atlanta, Georgia*, 2006 WL 739572, at *4 (N.D. Ga. March 20, 2006) (*citing Young v. Cooper Cameron Corp.,* 229 F.R.D. 50, 54 (S.D.N.Y. 2005) ("The focus of [the conditional certification] inquiry is not whether there has been an actual violation of law, but rather on whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated"); *see also Shajan v. Baralo, Ltd.*, 2010 WL 2218095, at *1 (S.D.N.Y. June 2, 2010) (At the conditional certification stage, "[w]eighing of the merits its absolutely inappropriate."); *see also Gjurovich v. Emmanuel's Marketplace, Inc.,* 282 F.Supp.2d 91, 96 (S.D.N.Y. 2003)("Once the Plaintiff makes a colorable claim for relief, the only inquiry necessary is whether the potential plaintiffs to be notified are similarly situated to the named plaintiff . . ..").

Similarly, courts have consistently recognized that discovery at the first notice stage is unnecessary for the "similarly situated" determination. *See Lloredo v. Radioshack Corp.,* 2005 WL 1156030, at *1 (S.D. Fla. May 12, 2005) (refusing to examine discovery in making its first

stage similarly situated determination); *see also Harrison v. Enterprise Rent-A-Car Co.*, 1998 WL 422169, at *13 (M.D. Fla. July 1, 1998) (holding that the fact that subsequent discovery may prove the original plaintiffs and the opt-in plaintiffs are not after all "similarly situated" does not defeat conditional class certification); *see also Schwed v. Gen. Elec. Co.,* 159 F.R.D 373, 375 (N.D.N.Y. 1995) ("Even where later discovery proves the putative class members to be dissimilarly situated, notice . . . prior to full discovery is appropriate as it may further the remedial purpose of the [FLSA]").

An examination of discovery is not appropriate because at this stage the Court is not making a *factual determination* regarding whether the putative class members are "similarly situated." *See also Brown v. Money Tree Mortgage, Inc.,* 222 F.R.D. 676, 682 (D. Kan. 2004) ("[T]he court will examine the individual plaintiffs' disparate factual and employment setting, as well as various defenses available to the defendant which appear to be individual to each plaintiff, during the 'second stage' analysis after the close of discovery."); *see also Goldman,* 2003 WL 21250571, at *8 ("A fact-specific inquiry is conducted only after discovery and a formal motion to decertify the class is brought by the defendant.").

Because the "similarly situated" determination at the notice stage is preliminary, Defendants will not be prejudiced by the facilitation of notice because they can later argue, if they so choose, that Plaintiff and the opt-in plaintiffs are not in fact "similarly situated" enough to proceed collectively to trial once discovery is complete.

   **D.**  **Whether Putative Collective Members May Have Signed a Dispute Resolution Agreement is Irrelevant at Stage I.**

Likewise, courts have routinely held that at the initial stage of collective certification, the existence of arbitration agreements is "irrelevant" to collective action approval "because it raises a merits-based determination." *See Compagnone v. DL Pool Serv., LLC,* No.

215CV647FTM99MRM, 2016 WL 6575087, at *3 (M.D. Fla. Nov. 7, 2016) ("the Court finds that defendant's arguments regarding the arbitration agreements are more properly suited to be addressed at the decertification stage."); *see also, Campbell v. Pincher's Beach Bar Grill Inc.*, No. 215CV695FTM99MRM, 2016 WL 3626219, at *4 (M.D. Fla. July 7, 2016) ("defendant's arguments regarding the arbitration agreements are more properly suited to be addressed at the decertification stage.") (internal citations omitted); *Williams v. Omainsky*, No. 15-0123-WS-N, 2016 WL 297718, at *7 (S.D. Ala. Jan. 21, 2016) (same); *Romero v. La Revise Associates, L.L.C.*, 968 F.Supp.2d 639 (2013), 2013 WL 5041458; citing *D'Antuono v. C & G of Groton, Inc.*, 2011 WL 5878045, at *4 (D.Conn. Nov. 23, 2011) (citing cases); *accord Hernandez,* 2012 WL 4369746, at *5; *Salomon v. Adderly Indus., Inc.,* 847 F.Supp. 2d 561, 565 (S.D. N.Y. 2012) ("The relevant issue here, however, is not whether Plaintiffs and [potential opt-in plaintiffs] were identical in all respects, but rather whether they were subjected to a common policy to deprive them of overtime pay . . . . ") (alteration in original) (internal citation and quotation marks omitted); *Sealy v. The Keiser School, Inc.*, Case. No. No. 11–61426–CIV., 2011 WL 7641238, p. 4 (S.D. Fla. 2011) (rejecting Defendant's argument that the existence of arbitration agreements resulted in the putative class members not being similarly situated); *Esparza v. C&J Energy Servs., Inc.*, No. 5:15-CV-850-DAE, 2016 WL 1737147, at *3 (W.D. Tex. May 2, 2016) (Permitting notice to employees and former employees who may ultimately not be permitted to remain part of the lawsuit) (internal quotation omitted). Ultimately, all similarly situated employees should receive notice regardless of whether they signed an arbitration agreement.

Moreover, even to the extent the Court were inclined to entertain Defendants' merits-based argument regarding the alleged existence of arbitration agreements at this stage, the designated arbitral forum of AAA is unavailable ***to any Entertainer*** because Tootsie Cabaret's

11

repeatedly refused to follow AAA's policies and rules and the AAA has indicated that it will no longer administer arbitrations involving Tootsie's Cabaret. *See* Letter from AAA, dated February 12, 2021; *see also Inetianbor v. CashCall, Inc.*, 768 F.3d 1346, 1351 (11th Cir. 2014) (an arbitration forum is integral and cannot be substituted by the court where agreement "selects not just the rules of procedure, but also the arbitral forum"); *Freeman v. SmartPay Leasing, LLC*, 771 Fed. App'x. 926 (11 Cir. 2019) ("In sum, SmartPay acted inconsistently with its contractual right to arbitrate when it refused to pay the initial filing fee, as expressly required by the arbitration agreement. SmartPay therefore waived its right to arbitration by failing to pay arbitration fees."). As such, Plaintiff and other Entertainers' only means of redressing Defendants' violations of the FLSA is in this Court, and all of Defendants' Entertainers are similarly situated in this regard as well.

As described above and in the attached declarations and additional evidence, Plaintiff easily exceeds her burden to facilitate notice. Here, Defendants operate the world's largest strip club, hire Entertainers to operate that strip club, exert significant control over the Entertainers' working conditions in a similar manner and fail to pay Entertainers any direct wages. Accordingly, Plaintiff seeks Court authorization to provide: (1) the proposed "Notice," attached as EXHIBIT A, to be sent to all similarly situated employees; and (2) the proposed "Consent to Join" form, attached as EXHIBIT B, which similarly situated Entertainers can complete, sign, and file with the Court.

### III. **PLAINTIFF'S NOTICE IS ACCURATE AND SHOULD BE TEXTED AND E-MAILED AS WELL AS MAILED.**

Plaintiff's proposed judicial notice is "timely, accurate, and informative." *See Hoffmann-La Roche,* 493 U.S. at 172. As such, the proposed notice achieves the ultimate goal of providing employees accurate and timely notice concerning the pendency of the collective action, and

should be adopted. To that end, Plaintiff requests they be permitted to e-mail and text the Class Notice, Exhibit A, to all workers within the defined class, in addition to mailing same via first-class mail. Particularly in this case, where the residence of putative opt-in Entertainers can often be transient, e-mail and text notice will better insure that the potential opt-ins receive the notice in accordance with the purposes of notice.

E-mail notice serves to further the broad remedial purpose of the FLSA and has been widely adopted by federal courts throughout the country. *See, e.g., Kraft v. Freight Handlers, Inc.,* 2019 WL 3854989, *6 (M.D. Fla. May 21, 2019); *Lewis v. Huntington Nat. Bank*, 2011 WL 8960489, at *2 (S.D. Ohio June 20, 2011) ("The addresses on file for [former employees] may or may not continue to be accurate, and using a second mode of communication will help ensure that all of these potential plaintiffs will receive at least one copy of the Notice Package."); *Butler v. Direct SAT USA, LLC*, 876 F. Supp.2d 560, 575 (D. Md. 2012) (allowing e-mail notice to putative class members because communication through e-mail is now the "norm."); *Denney v. Lester's, LLC*, 2012 WL 3854466, at *4 (E.D. Mo. Sept. 5, 2012) ("[T]he Court finds fair and proper notice to current and former servers will be accomplished by regular mail, electronic mail, and postings in Defendants' break rooms."); and *In re Deloitte & Touche, LLP Overtime Litig.,* 2012 WL 340114, at *2 (S.D.N.Y. Jan. 17, 2012)(noting that "communication through email is [now] the norm.").

Plaintiff also requests that this Court allow notice to be sent via text message. *See Landry v. Swire Oilfield Servs., L.L.C.,* 252 F. Supp. 3d 1079, 1129 (D.N.M. 2017) ("The Court finds persuasive the [p]laintiffs' argument that communication via email and text message will 'increase the chance of the class members receiving and reading the notice. . .'"). Additionally, "given the amount of junk mail that people receive, email and text message likely are more

effective methods for communicating with potential class members than traditional first-class mail." *Landry*, 252 F. Supp. 3d at 1130; *see also Irine v. Destination Wild Dunes Mgmt., Inc.*, 132 F. Supp. 3d 707, 711 (D.S.C. 2015) ("[T]ext messaging appears eminently reasonable to the Court. This has become a much more mobile society with one's email address and cell phone serving as the most consistent and reliable method of communication"); *Regan v. City of Hanahan*, 2017 WL 1386334, at *3 (D.S.C. Apr. 18, 2017) ("text messaging is reasonable because, in today's mobile society, individuals are likely to retain their mobile numbers and email addresses even when they move"); *Vega v. Point Security, LLC*, 2017 WL 4023289, at *4 (W.D. Tex. Sept. 13, 2017) ("[I]n the world of 2017, email and cell phone numbers are a stable, if not primary, point of contact for the majority of the U.S. population, and thus that [sic] using email and texts to notify potential class members is entirely appropriate.") Allowing notice by text message and e-mail will achieve the broad remedial purposes of the FLSA to ensure the most number of class members receive a form of the Notice and be given a chance to join this action.

**IV.** **A NINETY (90) DAY NOTICE PERIOD IS APPROPRIATE.**

Notice periods may vary, however, courts have routinely held that a sixty (60) to ninety (90) day notice period is appropriate in FLSA cases. *See, e.g., Fiore v. Goodyear Tire & Rubber Co.*, 2011 WL 867043, at *4 (M.D. Fla. March 10, 2011) (setting notice period at 90 days); *Ballew v. Lennar Corp.*, 2008 WL 4218137, at *1 (M.D. Fla. Sept. 11, 2008) ("The Court further finds the 90 day period to be reasonable…"); *Aguirre-Molina*, 2016 WL 4472992 at *7 (approving sixty day notice period); *Abdul-Rasheed v. KableLink Comm., LLC*, 2013 WL 5954785, *5 (M.D. Fla. Nov. 7, 2013) (approving sixty day notice period). Here, Plaintiff requests a sixty day notice period for putative class members to return their consent to join form

and opt into the case and also requests that reminder emails and text-messages be sent 30 days into the notice period.

V.     **NOTICE SHOULD BE GIVEN WITHIN A THREE-YEAR STATUTE OF LIMITATIONS PERIOD**

Notice within a three-year statute of limitations period is appropriate in this case. The FLSA allows a Plaintiff to collect damages within a three-year statute of limitations if it can be shown that a Defendant's violation of the FLSA was "willful"—meaning that the "employer either knew, or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Given the substantial case law determining that adult entertainers like Plaintiff are employees required to be paid minimum wage and overtime, Defendants' continued misclassification of the Entertainers can be nothing other than willful. *See, e.g.*, *Harrell v. Diamond A Entm't, Inc.*, 992 F. Supp. 1343 (M.D. Fla. 1997); *see also Reich v. Circle C. Invest., Inc.*, 998 F.2d 324 (5th Cir. 1993); *Foster v. Gold & Silver Private Club, Inc.*, 2015 WL 8489998 (W.D. Va. Dec. 9, 2015); *Degidio v. Crazy Horse Saloon & Rest., Inc.*, 2015 WL 5834280 (D. S.C. Sept. 30, 2015); *Mason v. Fantasy, LLC*, 2015 WL 4512327 (D. Colo. July 27, 2015); *Berry v. Great Am. Dream, Inc.*, 2014 WL 5822691 (N.D. Ga. Nov. 10, 2014); *McFeeley v. Jackson St. Entm't, LLC*, 47 F. Supp. 3d 260 (D. Md. 2014) *affirmed McFeeley et al v. Jackson Street Entertainment, LLC et al, xc*, 825 F.3d 235 (4th Cir. 2016); *Verma v. 3001 Castor, Inc.*, 2014 WL 2957453 (E.D. Pa. June 30, 2014); *Stevenson v. Great Am. Dream*, 2013 WL 6880921 (N.D. Ga. Dec. 31, 2013); *Butler v. PP&G, Inc.*, 2013 WL 5964476 (D. Md. Nov. 7, 2013); *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901 (S.D.N.Y. 2013); *Thornton v. Crazy Horse, Inc.*, 2012 WL 2175753 (D. Alaska June 14, 2012); *Clincy v. Galardi S. Enters., Inc.*, 808 F. Supp. 2d 1326 (N.D. Ga. 2011); *Thompson v. Linda and A., Inc.*, 779 F. Supp. 2d 139 (D. D.C. 2011). In any event, whether

Defendants' violations of the FLSA were willful is an issue going to the merits of the case, and not whether notice should be issued to potential claimants. *Abdul-Rasheed*, 2013 WL 5954785 at *5; *Harris v. Performance Transp., LLC*, 2015 WL 1257404, *4 (M.D. Fla, March 18, 2015). Thus, notice should go to all individuals who were employed by Defendant during the three-year period preceding the Court's ruling on the instant Motion.

## VI.   CLASS MEMBERS SHOULD BE ALLOWED TO ELECTRONICALLY EXECUTE THEIR CONSENT FORMS.

Federal Courts throughout the United States "recogniz[e] that 'we live in a time when all manner of commercial transactions are routinely cemented by electronic submission'" and "courts have approved the use of online, electronic signature opt-in forms." *Landry*, 252 F. Supp. 3d at 1130 (quoting *Mraz v. Aetna Life Ins. Co.*, 2014 WL 5018862, at *5 (M.D. Pa. Oct. 7, 2014); *Kraft,* 2019 WL 3854989 at *6 (allowing electronic signatures on consent forms and noting that "Florida law recognizes the validity of electronic signatures. Fla. Stat. § 668.004.");[2] *White v. Integrated Elec. Techs., Inc.,* 2013 WL 2903070, at *9 (E.D. La. June 13, 2013) (granting Plaintiffs' request to allow class members to execute electronic consent forms); *Jones v. JGC Dallas LLC*, 2012 WL 6928101, at *8 (N.D. Tex. Nov. 29, 2012), report and recommendation adopted, 2013 WL 271665 (N.D. Tex. Jan. 23, 2013) (allowing class members to be given the option to execute their consent forms online via electronic signature service). At the federal level, the Electronic Signatures in Global and National Commerce Act, effective since 2000, "facilitate[s] the use of electronic records and signatures in interstate or foreign commerce." 15 U.S.C. § 7001, *et seq*. Therefore, class members should have the option to sign

---

[2] Furthermore, during the COVID-19 pandemic, the Florida Supreme Court has issued numerous orders promoting remote and electronic participation in the litigation process. *See, e.g.,* Florida Supreme Court Administrative Order No. AOSC20-23, Amendment 5, available at https://www.floridasupremecourt.org/content/download/639134/file/AOSC20-23-Amendment-5.pdf.

their consent to join forms electronically, especially given the COVID-19 pandemic. Giving class members this option is in line with the FLSA's remedial purposes and would ensure that class members have the ability to submit their consent forms without additional obstacles standing in their way.

### VII. LIMITED DISCOVERY OF NAMES AND CONTACT INFORMATION OF THE PUTATIVE CLASS IS NECESSARY TO CARRY OUT NOTICE.

The opt-in provision of the FLSA requires some procedure for identifying and notifying potential class members. *Morden v. T-Mobile USA, Inc.,* 2006 WL 1727987, at *3 (W.D. Wash. June 22, 2006) (compelling the defendant to produce the names and addresses of potentially similarly situated employees despite the fact that no conditional class certification motion was pending before the court). "The first step is to identify those employees who may be similarly situated and who may therefore ultimately seek to opt in to the action." *Id.* As such, early discovery of a mailing list is routinely disclosed in FLSA collective actions because the lists are necessary to facilitate notice. *See, e.g., Hoffmann-La Roche,* 493 U.S. at 165; *see also Reese,* 2018 WL 1863833, at *6; *Randle v. Allconnect, Inc.*, 2014 WL 1795184 (N.D. Ga. May 6, 2014) ("Plaintiff moves to require Defendant to produce information about potential class members, including their full names, last-known addresses, email addresses, dates of employment and dates of birth. This information is within Defendant's possession, its production to Plaintiff will facilitate issuance of the notice, and it is required to be produced by Defendant."); *Anglada v. Linens 'N Things, Inc.,* 2007 WL 1552511, at *7 (S.D.N.Y. May 29, 2007); *Henry v. Quicken Loans, Inc.,* 2006 WL 2811291, at *7 (E.D. Mich. Sept. 28, 2006); *Gieseke v. First Horizon Home Loan Corp.,* 408 F. Supp. 2d 1164, 1169 (D. Kan. Jan. 10, 2006); *Dietrich v. Liberty Square,* 230 F.R.D. 574, 581 (N.D. Iowa 2005). Thus, if this Court grants Plaintiff's Motion, the

Court should likewise order Defendants to provide Plaintiff with a list of all putative class members' names, addresses, phone numbers, and e-mail addresses to carry out notice.

## CONCLUSION

In light of the broad remedial provisions of the FLSA, *see, e.g., Prickett v. DeKalb County,* 349 F.3d 1294, 1296-97 (11th Cir. 2003) (citations omitted), coupled with the lenient standard for conditional certification, Plaintiff's allegations in his Complaint, the Declarations of Plaintiff and Opt-in Plaintiffs, along with all of the additional evidence of record are more than sufficient to satisfy Plaintiff's relatively light burden of showing this Court that "there are [similarly situated] persons . . who have suffered wage and hour violations who would join this suit if they had notice of the suit."  *See Barron, supra.*

WHEREFORE, Plaintiff respectfully requests that this Court conditionally certify this case as a collective action, and permit and supervise notice to all current and former Entertainers who worked at Tootsie's Cabaret in the three years prior to the Court's order granting conditional certification.

## CERTIFICATE OF GOOD FAITH PURSUANT TO L.R. 7.1

Plaintiff's counsel conferred with Defendant's counsel pursuant to the local rules in a good faith effort to resolve this Motion prior to its filing, and is authorized to represent that Defendant oppose the relief sought by this Motion.

Dated: July 26, 2021

    Respectfully submitted,

*/s/ Andrew R. Frisch*
Andrew R. Frisch
FL Bar No. 27777
Bryan Arbeit
FL Bar No. 1010329
Morgan & Morgan, P.A.
8151 Peters Road, Suite 400s

Plantation, FL 33324
Tel: (954) WORKERS
Fax: (954) 327-3013
E-mail: afrisch@forthepeople.com
E-mail: barbeit@forthepeople.com


Brett R. Cohen, Esq.
Pro Hac Vice
LEEDS BROWN LAW, P.C.
One Old Country Road, Suite 347
Carle Place, NY 11514
Tel: (516) 873-9550
bcohen@leedsbrownlaw.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 26, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF filing system, which I understand will send notice of same to all counsel and parties of record.

*/s/ Andrew Frisch*
Andrew R. Frisch