UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CIVIL ACTION NO: 1:21-cv-21733-KMM

MAYTE FIGUEREDO-CHAVEZ,
individually and on Behalf of All
Others Similarly Situated,

    Plaintiffs,
vs.

RCI HOSPITALITY HOLDINGS, INC.,
MIAMI GARDENS SQUARE ONE, INC.,
and ERIC LANGAN, individually,

    Defendants.
_____/

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
<u>DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS</u>**

Defendants RCI Hospitality Holdings, Inc., and Miami Gardens Square One, Inc., (collectively, "Tootsie's" or "Defendants") motion to compel arbitration and dismiss this action ("Motion") must be denied because they have waived arbitration and/or rendered their arbitration provision uniformly unenforceable for *all* Entertainers, including the named Plaintiff, Mayte Figueredo-Chavez ("Figueredo-Chavez"), and the two Opt-in Plaintiffs, Ingrid Sabogal ("Sabogal") and Gloria Coronell ("Coronell") (together, the "Opt-in Plaintiffs").

Tootsie's has expressly waived arbitration with regard to Plaintiff Figueredo-Chavez as it explicitly and affirmatively represented to the Court that it made the "decision not litigate the named Plaintiff's claims in arbitration." D.E. 26 at p. 2.[1]

Tootsie's has also waived/voided any contractual right it may have had to arbitrate the instant wage and hour claims by rendering the designated arbitral forum, the American Arbitration Association ("AAA"), unavailable to any Entertainer as a result of its stubborn and continued refusal to participate in arbitration and its refusal to comply with AAA policies and procedures. *See* Ex. 1 (Letter from AAA Declining to Administer Future Arbitrations Involving Tootsie's). Tootsie's motion to compel arbitration is therefore futile, because neither Plaintiff nor the Opt-in Plaintiffs, or any other Entertainer, will be able to arbitrate their claims in accordance with the terms of Tootsie's arbitration provision. *See id*.

In recognition that the arbitral forum designated in the arbitration provision is no longer available, Tootsie's requests that the Court impermissibly re-draft the parties' arbitration provision. Specifically, Tootsie's asks the Court to unilaterally appoint an arbitrator of its own choosing with respect to Plaintiff Figueredo-Chavez's claims (and not the Opt-in Plaintiffs') and compel her claims back to arbitration so that Tootsie's may get a second bite at the apple.

---

[1] Tootsie's counsel also acknowledged that Tootsie's had waived arbitration for Plaintiff Figueredo-Chavez in a settlement hearing before the Magistrate Judge on July 26, 2021.

1

Binding precedent and the language of the arbitration provision itself preclude this possibility however, especially where the designated arbitral forum is no longer available solely as a result of Tootsie's willful and continued refusal to abide by the terms of its own unilaterally drafted "Entertainer Licensing Agreement" ("ELA"). The law is clear that the Court cannot simply ignore the language in the ELA and/or substitute language which is contrary to the clear intent of the parties as expressed in the ELA to create a new arbitration provision as Tootsie's urges.

For these reasons, Tootsie's Motion must be denied.

## FACTUAL BACKGROUND

On January 25, 2019, Plaintiff Figueredo-Chavez, Opt-in Plaintiff Sabogal, and eleven other Entertainers filed arbitration demands with AAA alleging unpaid minimum wage, overtime and tip disgorgement claims. *See* Defs. Ex. E [DE 29-5]. On January 31, 2021, AAA advised that requisite commencement fee for each case was $2,200 and that the thirteen claimants owed a total of $3,900 (or $300 per case) while Tootsie's owed a total of $24,700 (or $1,900 per case). *See id.* Tootsie's challenged AAA's determination regarding the division of the filing fees, and on February 4, 2019, AAA denied the challenge and ruled:

> **Per Commercial Rule 1:**
>
> Beginning October 1, 2017, AAA will apply the Employment Fee Schedule to any dispute between an individual employee or an independent contractor (working or performing as an individual and not incorporated) and a business or organization and the dispute involves work or work-related claims, including any statutory claims and including work-related claims under independent contractor agreements.

Ex. 2 (Feb. 4, 2019 email acknowledging Tootsie's challenge and reiterating its stance of payment obligations). However, AAA advised, "Should any party disagree, the fee allocation

dispute may be brought forth to the appointed arbitrator to make a final determination and reassess the determined fee schedule." *See id.*[2]

Unsatisfied with this response, Tootsie's requested that AAA and not the arbitrator reconsider the allocation of the filling fee. Ex. 3 (Feb. 14, 2019 email). On February 14, 2019, AAA upheld its initial determination, and reiterated what was explained in its February 4, 2019 correspondence. *Id.* AAA again advised:

> If it is Respondent's position that the fees should be allocated differently than indicated on AAA's Employment/Workplace Fee schedule updated and effective October 1, 2017 per Commercial Rule 1, ***that issue can be raised to an arbitrator, who would have the authority to issue an order either confirming or overturning the AAA's initial administrative decision***. The AAA will comply with an order entered by an arbitrator.

*Id.* (emphasis added). Tootsie's still refused to pay its share of the filing fees pursuant to the Employment Fee Schedule, so on April 3, 2019, AAA went so far as giving Tootsie's the option of paying half of the total filing fee pursuant to the Commercial Rules so that AAA could "move the case forward and appoint a special master to determine the fee allocation threshold issue." Ex. 4. Notably, under this proposal, Tootsie's financial obligation would be *exactly what it contended it should be required to pay.*[3] Notwithstanding the AAA's accommodation, Tootsie's failed to make payment of the amounts even it agreed were due and owing under the ELA.

---

[2] Although the Eleventh Circuit has refrained from weighing in on similar remedial restrictions and severability, it has squarely held that the language of an arbitration provision is to be construed solely by the AAA and not the court where the parties incorporate the AAA rules by reference, as here. *Terminix International Co., LP v. Palmer Ranch Ltd. Partnership*, 432 F.3d 1327 (2005). However, Tootsie's refused to accept AAA's initial determination or allow an arbitrator to make a final determination on an issue that should have been decided by an arbitrator. *Compare Rodriguez v. Castforce, Inc.*, 190 F. Supp. 3d 1148, 1154 (N.D. Ga. 2016) (declining to reach the issue of unconscionability, and stating that the "Court expects the arbitrator to consider that question at a very preliminary stage" and "[a]s this is unquestionability an employment case, [the employer] should, if it is genuinely interested in a fair arbitration, consent to the arbitration proceeding under the AAA Employment Rules, with an arbitrator selected from the Employment Panel.").

[3] Tootsie's Motion claims that AAA's offer to only pay half the filing fee is "factually inaccurate." Defs.' Br. at p. 8 [D.E. 29]. Tootsie's statement in this regard is demonstrably false. AAA clearly indicated to Tootsie's that it could pay only half of the filing fee, the amount Tootsie's argued was due and owing, to decide the threshold issue regarding the allocation of fees and costs, and the communications from AAA evidence the offer. *See* Ex. 4.

3

On February 12, 2021, AAA notified the parties that it would no longer administer *any* arbitration involving Tootsie's because "the business' failure to remit their portion of the filing fees constitutes a failure to adhere to [AAA] policies." Ex. 1.

## RELEVANT PROCEDURAL HISTORY

On May 6, 2021, Plaintiff Figueredo-Chavez filed her Collective and Class Action Complaint in this Court [D.E. 1]. On June 7, 2021 and June 16, 2021, Defendants filed their respective Answers [D.E.s 10 and 11]. Significantly, both Defendants admitted that this Court had jurisdiction over this action. *Id.* at ¶ 8 ("Defendant admits this Court has jurisdiction over the subject matter of this action."). On July 6, 2021, Opt-in Plaintiff Sabogal filed her consent to join [D.E. 15]. On July 12, 2021, Opt-in Plaintiff Coronell filed her consent to join [D.E. 17].

On July 26, 2021, Plaintiff filed her motion for conditional certification [D.E. 22]. On August 6, 2021, the parties submitted a Joint Scheduling Report [D.E. 25]. On August 9, 2021, Defendants filed their response to the motion for conditional certification [D.E. 26]. On August 13, 2021, Defendants filed the instant motion.

## ARGUMENT

**I.  TOOTSIE'S EXPRESSLY WAIVED ARBITRATION WITH RESPECT TO PLAINTIFF FIGUEREDO-CHAVEZ**

In addition to making the designated arbitral forum unavailable to all Entertainers, including Plaintiff Figueredo-Chavez, *see infra* Section II, Tootsie's expressly waived arbitration with respect to Plaintiff Figueredo-Chavez. This action was filed on May 6, 2021 [D.E. 1] and rather than move to compel arbitration, Defendants filed Answers [D.E.s 10 and 11], participated in the Court's settlement procedures [D.E.s 8, 13 and 16] and participated in preparation of a Joint Scheduling Report [D.E. 25]. Moreover, on August 9, 2021, Defendants affirmatively and expressly represented to the Court that they had elected to waive arbitration by writing that the

4

parties made a "decision not litigate the named Plaintiff's claims in arbitration." D.E. 26 at p. 2. Defendants' unequivocal statement was an express waiver of any right to arbitrate. *See Pajcic v. Am. Gen. Life Ins. Co.*, 419 F. Supp. 2d 1380, 1382 (M.D. Fla. 2006) ("Under Florida law, waiver is the voluntary and intentional relinquishment or abandonment of a known and existing right or privilege which, except for the waiver, the party would have enjoyed. Waiver can be established through ***express language*** or inferred by actions or conduct demonstrating an intent to relinquish one's rights.") (citation omitted and emphasis added); 3 Commercial Arbitration § 50:3: Express waiver of arbitration ("Arbitration is a matter of contract and may be explicitly waived by direct communications between the parties or their counsel which repudiate a right to arbitrate."); *Beverly Hills Dev. Corp. v. George Wimpey of Fla., Inc.*, 661 So. 2d 969, 971 (Fla. Dist. Ct. App. 1995) (party expressly waived arbitration by initially raising arbitration issue and subsequently withdrawing request); *De Sapio v. Kohlmeyer,* 35 N.Y.2d 402, 406 (N.Y. 1974) ("[t]he courtroom may not be used as a convenient vestibule to the arbitration hall so as to allow a party to create his own unique structure combining litigation and arbitration.").

## II. TOOTSIE'S CONDUCT WAIVED ARBITRATION WITH RESPECT TO ALL ENTERTAINERS

Tootsie's waived any right it may had to enforcing arbitration by engaging in conduct that contravened the ELA's arbitration provision and rendering the designated arbitral forum of AAA unavailable to any Entertainer.

Courts in this Circuit apply a two-part test to determine whether a party has waived its contractual right to arbitrate. *Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1315 (11th Cir. 2002). "First, they decide if, 'under the totality of the circumstances,' the party 'has acted inconsistently with the arbitration right,' and, second, they look to see whether, by doing so, that party 'has in some way prejudiced the other party.'" *Id.* at 1315-16 (quoting *S & H Contractors,*

5

*Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990)). "There is no settled rule, however, as to what constitutes a waiver or abandonment of the arbitration agreement." *Freeman v. SmartPay Leasing, LLC*, 771 F. App'x 926, 932 (11th Cir. 2019) (quoting *Howard Hill, Inc. v. George A. Fuller Co.*, 473 F.2d 217, 218 (5th Cir. 1973)). "Rather, whether waiver has occurred 'depends upon the facts of each case.'" *Id.* (quoting *Burton-Dixie Corp. v. Timothy McCarthy Constr. Co.*, 436 F.2d 405, 408 (5th Cir. 1971)). "Even though there is that presumption in favor of arbitration, 'the courts are not to twist the language of the contract to achieve a result which is favored by federal policy but contrary to the intent of the parties.'" *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1214 (11th Cir. 2011) (quoting *Goldberg v. Bear, Stearns & Co.,* 912 F.2d 1418, 1419-20 (11th Cir. 1990).

Here, Tootsie's acted inconsistently with any right it may have had to arbitrate by rendering the designated arbitral forum of AAA unavailable to all Entertainers, including Plaintiff Figueredo-Chavez and Opt-in Plaintiff Sabogal who previously sought to arbitrate their claims against Tootsie's. *See Blake Constr. Co. v. United States,* 252 F.2d 658, 662 (5th Cir. 1958) (finding waiver because the party demanding arbitration had consistently rejected the other party's earlier requests for arbitration).

Tootsie's appears to argue that it was not at fault for rendering AAA unavailable to all Entertainers because it took "every effort to ensure that the provision was enforced as written before the AAA."[4] Defs. Br. at p. 9 [D.E. 29]. Tootsie's argument in this regard is belied by the clear record before the Court.

---

[4] Pursuant to the ELA, the dispute over of the division of fees and costs was required to have been submitted to an arbitrator or a special master to make a final determination, but Tootsie's declined both despite being offered the ability to pay *no more* than what it claims it should be required to pay. Thus, the claim that it took "every effort to ensure that the provision was enforced at written before the AAA" is false. *See* Defs. Br. at p. 9 [D.E. 29]. Moreover, Tootsie's likely incurred substantially more in attorneys' fees to challenge AAA's *initial* determination on the division of fees and costs than had it allowed the dispute to be presented to an arbitrator.

Tootsie's ignores that the ELA's splitting of the costs and expenses is permitted only "to the extent allowable by applicable law." *See, e.g.* Defs. Ex. B at § 15 [D.E. 29-2].[5] Moreover, here it was indisputably Tootsie's refusal to pay even half of the filing fees—the amount it urged was due pursuant to the Commercial Rules and the terms of the ELA—that prevented an arbitrator (or special master) appointed by AAA from making a final determination on the validity of the splitting of fees and costs (which AAA unequivocally stated it would follow).[6] *See* Exs. 3-4; *see also Freeman v. SmartPay Leasing, LLC*, 771 Fed. App'x. 926, 934 (11th Cir. 2019) (recognizing that "any dispute that SmartPay had with the fee-sharing arrangement could and should have been submitted to the arbitrator," and failure to do so constituted waiver).

After AAA's initial and non-binding determination, Tootsie's took no further action to arbitrate before the AAA or otherwise arbitrate the claims of Plaintiff Figueredo-Chavez, Opt-In Plaintiff Sabogal or the other eleven Entertainers. Instead, Tootsie's waited over two years after AAA's initial determination regarding the allocation on arbitration fees, another three months after this class and collective litigation was commenced, and more than a month after it joined issue by filing Answers, before seeking to compel arbitration by its instant motion to compel arbitration (after it had expressly waived arbitration at least with respect to Plaintiff Figueredo-Chavez on multiple occasions). Under these circumstances, Tootsie's acted inconsistently with any contractual right it may have had to arbitrate claims involving Entertainers. *See Freeman*, 771 Fed. App'x. at 934 ("When SmartPay refused to comply with JAMS's Consumer Minimum Standards, SmartPay acted inconsistently with and, therefore, waived its contractual right to arbitration."); *Hernandez v. Acosta Tractors Inc.*, 898 F.3d 1301, 1306 (11th Cir. 2018) ("A

---

[5] The issue of whether an agreement to divide fees and costs equally is allowable by applicable law is reserved for an arbitrator. *See* Defs. Ex. B at § 15 [D.E. 29-2]. Because Tootsie's prevented an arbitrator from making this determination, it cannot raise the issue here.

[6] AAA's agreement to abide by the decision of the arbitrator negates any argument that AAA acted inconsistently with the ELA's arbitration provision. *See* Ex. 3.

calculated choice to abandon arbitration after getting adverse rulings from the arbitrator certainly looks like forum shopping. And this type of behavior would surely be a factor the District Court could consider in deciding whether to sanction [the defendant] by entering a default judgment."); *Mason v. Coastal Credit, LLC*, 2018 WL 6620684, at *6 (M.D. Fla. Nov. 16, 2018) (holding that the defendant waived the right to arbitration by failing to pay the required AAA fees, and noting that "Plaintiff paid the AAA fees, but Defendant did not. As a result of Defendant's default, the AAA terminated the arbitration. Accordingly, Defendant proceeded inconsistently with his right to arbitration"); *Garcia v. Mason Contract Prod., LLC*, 2010 WL 3259922, at *3-4 (S.D. Fla. Aug. 18, 2010) ("The parties' agreed-upon contractual dispute resolution mechanism, hence, is no longer possible," due to the defendant's failure to pay the required fees, and this "failure to comply with the contractual rules agreed to by the parties clearly constitutes a 'default' as that term is used in § 3 of the FAA."); *see also Nat'l Iranian Oil Co. v. Ashland Oil, Inc.*, 817 F.2d 326, 333-34 (5th Cir. 1987) ("[A] party may not rely on the doctrine of impossibility or impracticability '[i]f the event is due to the fault of the ... [party] himself [or herself].' Simply put, 'a party may not affirmatively cause the event that prevents ... [the] performance.'") (citations omitted).

All Entertainers have been equally and irreparably prejudiced by Tootsie's conduct that rendered the designated arbitral forum unavailable to them. *See Freeman*, 771 Fed. App'x. at 933 (finding Freeman to be have been prejudiced by SmartPay's refusal to pay because it "effectively precluded Freeman from seeking relief through the arbitration proceeding rather than in the district court."). Tootsie's actions have also prejudiced Plaintiff Figueredo-Chavez and Opt-in Plaintiff Sabogal because it has caused them to pay fees to AAA (and for Plaintiff Figueredo-Chavez, to the Court as well), and substantially delayed the resolution of their claims. Plaintiff

Figueredo-Chavez and the Opt-in Plaintiffs have also spent time participating in this litigation (i.e. reviewing the Complaint, signing a consent to joins, providing declarations in support of conditional certification and preparing for and participating in the Court's settlement procedures) in addition to the time invested by her counsel. *See* D.E. 8. Tootsie's actions demonstrate clearly and unequivocally that it waived arbitration any right to arbitration by rendering the designated arbitral forum unavailable to all Entertainers.

Tootsie's argument that the Court must make an individualized waiver inquiry as to each Entertainer is wrong. Tootsie's acknowledges that all Entertainers signed the same arbitration provision. *See* Declaration of Sally Chew at ¶ 5 [D.E. 26-1] (claiming that all Entertainers sign an ELA, "all of which contain the same arbitration clause."). Thus, Tootsie's conduct that rendered the designated forum of AAA unavailable applies equally to all Entertainers, and all Entertainers are similarly prejudiced by their inability to arbitrate their claims before AAA. This is far from an issue of first impression. Under similar circumstances courts have held the waiver of arbitration need not be individually analyzed. *See Gunn v. NPC Int'l, Inc.* 625 Fed. Appx. 261, *267 (6th Cir. 2015) (declining to address waiver issue on an individual basis among the named and opt-in plaintiffs, reasoning "[i]n relation to the issues posed by the waiver question, all plaintiffs are 'similarly situated.'"); *Prowant v. Federal Nat'l Mortgage Assoc.*, 225 F. Supp. 3d 1291 (N.D. Ga. 2017) (rejecting the argument that waiver must be determined on an individualized basis and finding "persuasive authority that arrive at directly opposing conclusions").[7] Since Tootsie's conduct uniformly affected all Entertainers in the same manner,

---

[7] Tootsie's citation to *Tristar Fin. Ins. Agency v. Equicredit Corp. of Am.*, 97 Fed. App'x. 462 (5th Cir. 2004) [D.E. 29], is misplaced. That case concerned solely a delay in the moving party's assertion of contractual arbitration rights and participation in litigation, not an express waiver of arbitration and/or lack of arbitral forum as here. *See id.* at *465. In contrast, it is Tootsie's conduct prior to this action that resulted in its waiver of arbitration and the invalidation of the arbitration provision with respect to all Opt-in Plaintiffs and Entertainers alike. Nor does *Tristar Fin. Ins. Agency v. Equicredit Corp. of Am.*, 97 Fed. App'x. 462 (5th Cir. 2004) stand for the proposition that a party *must* join an action before waiver based on pre-litigation conduct can be found. *Id.* at 464 ("waiver *in this case*

9

this Court need not make an individualized determination for every current and future opt-in plaintiff since a finding of waiver as to one Entertainer is a waiver as to all. *See Gunn; Prowant, supra.*

### III. THE DESIGNATION OF AAA IN THE ELA AS THE ARBITRATION FORUM IS AN INTEGRAL/ESSENTIAL PART OF THE AGREEMENT TO ARBITRATE, AND TOOTSIE'S CANNOT COMPEL ARBITRATION HAVING RENDERED THE DESIGNATED FORUM UNAVAILABLE

Tootsie's seeks to compel the Opt-in Plaintiffs to arbitrate their claims before AAA even though it waived its right to arbitration, and AAA has expressly declined to administrator ***any*** further arbitrations involving Tootsie's. *See* Ex. 1. In addition, Tootsie's moves the Court to select an arbitrator for a second arbitration regarding Plaintiff Figueredo-Chavez. Setting aside the obvious inconsistency between Tootsie's alternative requests, both branches of Tootsie's Motion must be denied.

#### A. The AAA Has Refused to Administer Any Further Arbitrations Involving Tootsies, and Any Attempt to Compel Arbitration Before AAA is Futile

As a threshold matter, any attempt to arbitrate the Opt-in Plaintiff's claims before AAA is futile given AAA's decision to decline to administrator any and all arbitrations involving Tootsie's. Tootsie's Motion fails to acknowledge, let alone dispute, that AAA has declined to administer future arbitrations involving Tootsie's because of its repeated violation of AAA policies and procedures, which Tootsie's committed in the arbitrations brought by Plaintiff Figueredo-Chavez, Opt-in Plaintiff Sabogal and eleven other Entertainers. *See* Ex. 1.

Arbitration cannot be compelled where the sole designated arbitral forum is unavailable because of Tootsie's conduct, and any attempt to arbitrate the Opt-in Plaintiffs claims before AAA, would be futile. *See Steffanie A. v. Gold Club Tampa, Inc.*, 2020 WL 4201948, at *5

---

depends on the conduct of the parties before the district court") (emphasis added); *cf. Prowant, supra* (waiver applied equally to the existing plaintiffs and putative opt-in plaintiffs who had yet to join case at the time court initially ruled employer waived arbitration).

(M.D. Fla. July 22, 2020) ("In sum, the parties' agreed-upon dispute resolution mechanism, arbitration before the AAA, is no longer possible because the AAA has closed the file due to Defendants' non-payment of the initial filing fee."); *see also Garcia v. Mason Contract Prod., LLC*, No. 08-23103-CIV, 2010 WL 3259922, at *4 (S.D. Fla. Aug. 18, 2010) ("Plaintiff did not agree or assent to a AAA-like procedure; he agreed to a AAA-enforced procedure.").[8] Respectfully, this case is indistinguishable from both *Steffanie A.* and *Garcia* and thus the result should be the same.

### B. The Designated Arbitral Forum of AAA is Integral to the Agreement to Arbitrate and Cannot Be Substituted by the Court

Implicitly acknowledging the fact that Plaintiff Figueredo-Chavez cannot arbitrate her claims before AAA, Tootsie's requests that the Court appoint a substitute arbitrator pursuant to 9 U.S.C. § 5 for Plaintiff Figueredo-Chavez's claims (but as noted above, not for the Opt-in Plaintiffs' claims). But the Court cannot disregard the designated arbitral forum because: (1) the selected arbitral forum is integral to the agreement to arbitrate, and (2) 9 U.S.C. § 5 does not permit the Court to select an arbitrator where the arbitration agreement specifically provides for a method to select one.

#### 1. The Designated Arbitral Forum of AAA is an Integral Part the ELA's Arbitration Provision.

The arbitration provision in the ELA unequivocally states that disputes are to be "***governed and settled*** by an impartial independent ***appointed by the American Arbitration Association***" and makes additional references to AAA's rules and fees imposed by AAA. *See*

---

[8] In *Garcia*, the court rejected a nearly identical argument from an employer who had defaulted in arbitration before the AAA, and held: "By failing to timely pay its share of the arbitration fee, Defendant materially breached its obligations, thereby "scuttling" that opportunity… [U]nder these circumstances does not require a district court to return the parties once more to arbitration, whether under sections 3 or 4 of the FAA." *Id*.

11

Defs. Ex. B at § 15 [D.E. 29-2].[9] Eleventh Circuit precedent holds that under these circumstances the designated arbitral forum in the ELA is integral to the agreement to arbitrate and cannot be substituted by the Court. *Inetianbor v. CashCall, Inc.*, 768 F.3d 1346, 1351 (11th Cir. 2014) (an arbitration forum is integral and cannot be substituted by the court where agreement "selects not just the rules of procedure, but also the arbitral forum"); *Flagg v. First Premier Bank*, 644 F. App'x 893, 896 (11th Cir. 2016) ("In this case, the arbitration agreement specifically designates the NAF as the arbitral forum and mentions the chosen forum throughout the agreement."); *Beverly Enterprises Inc. v. Cyr*, 608 F. App'x 924, 925 (11th Cir. 2015) ("the NAF code is "integral" to the agreement in this case because the agreement explicitly incorporates the NAF code, making the code an essential part of the agreement."); *see also Dean v. Heritage Healthcare of Ridgeway, LLC*, 408 S.C. 371, 384 (S.C. 2014) ("we find that the named arbitral forum is not a material term to agreements in which the parties agree to arbitrate 'in accordance with' the named forum's rules, absent other evidence to the contrary; however, as in Grant, when parties elect for a proceeding 'administered by' a named forum, that forum should be viewed as integral to the arbitration agreement, absent other evidence to the contrary.").

Tootsie's urges the Court to rely on a singular case, *De Pombo v. IRINOX N. Am., Inc.*, 2020 WL 6290153, at *1 (S.D. Fla. Oct. 27, 2020). However, *De Pombo* bears little similarity to the case at bar. First, the defendants in *De Pombo* had selected an arbitrator who made a determination not to enforce the indemnification provision in direct contravention of the parties'

---

[9] Tootsie's incorrectly claims that "ELAs in this case contain reference to the AAA only by designating it to appoint an arbitrator." Defs. Br. at p. 10 [D.E. 29]. In addition to appointing an arbitrator, the arbitration provision refers to a specific branch of AAA, references two sets of AAA rules fees, refers to the fees and costs imposed by AAA and unequivocally states that the arbitration must be "governed and settled" by an arbitrator appointed by AAA. *See* Defs. Ex. B, at § 15.

prior settlement agreement. *Id.* Here, AAA, the designated forum was prevented from rendering any ruling due to Tootsie's dilatory tactics and intentional refusal to participate in arbitration in the first instance. Second, here AAA did not render a ruling directly contrary to the explicit terms of the arbitration agreement. To that end, unlike the indemnification provision at issue in *De Pombo*, the splitting of fees and costs in the ELA's arbitration provision unambiguously states it applies only "to the extent allowable by applicable law." *See, e.g.*, Defs. Ex. B at § 15 [D.E. 29-2]. Again, Tootsie's conduct prevented an arbitrator from making a determination on whether the splitting of fees and costs was permitted by applicable law by refusing to pay even the portion of the filing fees it agreed it owed. Third, there are material differences between the arbitration provision at issue here and the one considered by the *De Pombo* court. In *De Pombo*, the provision containing the arbitration agreement was two sentences long and gave the party "seeking to enforce the Agreement" the ability to bring a dispute "***either*** by court action, ***or*** by binding arbitration administered by the American Arbitration Association under its commercial dispute resolution rules." *De Pombo*, 2020 WL 6290153, at *3 (emphasis added). In contrast to the cursory language at issue in *De Pombo*, Tootsie's arbitration provision at issue here spans over two pages, makes multiple references AAA, including reference to the AAA's Optional Rules for Emergency Measures of Protection, and requires the arbitration to not only be administered by AAA, but mandates that the arbitration be "governed and settled by an impartial independent appointed by the American Arbitration Association." Defs. Ex. B at § 15 [D.E. 29-2].[10] The language in the ELA designating AAA as the sole forum to arbitrate is unequivocal and integral to the obligation to arbitrate.

---

[10] Arbitrating before an impartial independent appointed by AAA is not without meaning. "The AAA has long held its mediators and arbitrators to strict codes of ethics and model standards of conduct to ensure fairness and impartiality in conflict management. To further ensure the AAA's integrity, however, the Association also

To the extent Tootsie's urges the Court to follow *De Pombo* and rely on the severability clause in the agreements to rewrite the parties' agreement to arbitrate here, such reliance is misplaced. It is well-settled that a Court may not *replace* or *modify* essential terms of the parties' agreement, such as the sole designated forum as here. *See De Pombo*, 2020 WL 6290153 at *5. Furthermore, here, the ELA delegates to the arbitrator "exclusive authority to resolve any and all disputes over the validity, enforceability and/or alleged unconsciousability of any part of this license" and grants the arbitrator authority to "modify such provisions to alleviate any invalidity, unenforceability and/or unconscionability." *See* Defs. Ex. B at § 15 [D.E. 29-2]. Meanwhile, the severability provision in the ELA is more limited since it only permits an invalid or unenforceable "provision" to be severed and does not grant authority to modify the terms of the ELA. *See id.* at § 16; *cf. Schuiling v. Harris*, 286 Va. 187, 194 (Va. 2013) (noting that severability provision "permits severing not only whole provisions but '"any part of any provision"'"). [11]

For all of these reasons, the Court may not sever the arbitral forum from ELA's arbitration provision for Plaintiff Figueredo-Chavez or any other Entertainer since arbitration at AAA is integral part of the obligation to arbitrate.

### 2. The Court Cannot Appoint an Arbitrator For Plaintiff Figueredo-Chavez's Claims

As discussed in Section I, *supra*, Tootsie's expressly waived any contractual right it may have had to arbitrate Plaintiff Figueredo-Chavez's claims. In addition, 9 U.S.C. § 5 is clear that when an arbitration agreement provides "for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method ***shall*** be followed." 9 U.S.C. § 5 (emphasis added). The ELA's arbitration provision designates AAA as both the arbitral forum and its rules for the rules

---

developed Standards of Ethics and Business Conduct for its staff, as well as a general Statement of Ethical Principles to expand on its core values as an organization." *See* https://www.adr.org/MissionPrinciples.

[11] This difference in language supports that the entire arbitration provision, including the acknowledgment of a class and collective waiver as a result of arbitration, should be severed from the ELA.

to be used to appoint an arbitrator (or "impartial independent"). *See* Defs. Ex. B at § 15 [D.E. 29-2].[12] That Tootsie's elected to prevent the AAA from selecting an arbitrator (and/or special master) because it was unhappy with AAA's *initial* determination regarding the division of fees and costs is not a basis for the Court to disregard the clear language of the ELA and appoint an arbitrator of its choosing. In other words, all Tootsie's had to do was pay half of the filing fees for an arbitrator—the amount it agreed it was required to pay—so that that the parties could obtain a *final* determination on the validity of the splitting of fees and costs (a fact that Tootsie's conveniently omits in its Motion). *See id*. That Tootsie's chose not to follow the rules it imposed on the parties' arbitration is not a basis to rewrite the ELA after-the-fact to cater to Tootsie's current litigation preferences. Tootsie's cannot seek an alternative arbitrator pursuant to 9 U.S.C. § 5 where Tootsie's waived arbitration and obstructed the specified method in the ELA for selecting an arbitrator.

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests that this Court deny Defendants' motion to compel arbitration and dismiss in its entirety.

Dated: September 3, 2021

                                                                                               Respectfully submitted,

                                                                                               ***/s/ Andrew R. Frisch***
                                                                                               Andrew R. Frisch
                                                                                               FL Bar No. 27777
                                                                                               Bryan Arbeit
                                                                                               FL Bar No. 1010329
                                                                                               Morgan & Morgan, P.A.
                                                                                               8151 Peters Road, Suite 400s
                                                                                               Plantation, FL 33324
                                                                                               Tel: (954) WORKERS
                                                                                               Fax: (954) 327-3013

---

[12] AAA's rules provide for an arbitrator selection process that requires the parties to rank and strike arbitrators – something that that would be unavailable to Plaintiff if the Court selected an arbitrator. *See* https://www.adr.org/ArbitratorSelection.

E-mail: afrisch@forthepeople.com
E-mail: barbeit@forthepeople.com

Brett R. Cohen, Esq.
Pro Hac Vice
LEEDS BROWN LAW, P.C.
One Old Country Road, Suite 347
Carle Place, NY 11514
Tel: (516) 873-9550
bcohen@leedsbrownlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 3, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF filing system, which I understand will send notice of same to all counsel and parties of record.

*/s/ Andrew Frisch*
Andrew R. Frisch