**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:21-cv-21733-KMM

MAYTE FIGUEREDO-CHAVEZ,
*individually and on behalf of all*
*others similarly situated*,

    Plaintiffs,

v.

RCI HOSPITALITY HOLDINGS, INC., *et al.*,

    Defendants.
_____/

**ORDER**

THIS CAUSE came before the Court upon named Plaintiff Mayte Figueredo-Chavez's ("Plaintiff") Expedited Motion to Conditionally Certify Collective Action and Facilitate Notice to Putative Collective Members. ("Mot.") (ECF No. 22). Defendant RCI Hospitality Holdings, Inc., and Defendant Miami Gardens Square One, Inc.'s ("Defendants") filed a response in opposition. ("Resp.") (ECF No. 26). Plaintiff filed a reply. ("Reply") (ECF No. 30). The Motion is now ripe for review.

**I.    BACKGROUND**

This case arises from a dispute under the Fair Labor Standards Act of 1938 ("FLSA"). *See generally* Compl. Plaintiff works as an exotic dancer ("Entertainer") at Tootsie's Cabaret, an adult entertainment club that is owned and operated by Defendants. *Id.* ¶ 1. Plaintiff claims that "Defendants have a longstanding policy of misclassifying their employees as independent contractors." *Id.* ¶ 2. As a result of this policy, Plaintiff alleges that she was only compensated in the form of tips from club patrons and, therefore, was deprived of compensation under the applicable minimum wage and overtime rate, in violation of the FLSA. *Id.* ¶¶ 3–4.

Plaintiff brings the above-captioned cause as "a collective action to recover the unpaid wages owed to her and all other similarly situated employees, current and former, of Defendants who worked at Tootsie's Cabaret, at any time during the [three-year] period before this Complaint was filed up to the present." *Id*. ¶ 6. On July 6, 2021, Opt-in Plaintiff Sabogal filed her notice of consent to join this action, and on July 12, 2021, Opt-in Plaintiff Coronell did the same. (ECF Nos. 15, 17).

Plaintiff Figueredo-Chavez executed an "Entertainer License Agreement," ("Figueredo-Chavez ELA") (ECF No. 29-4) at 6–7, with Defendant Miami Gardens, which contained an arbitration provision stating, in relevant part:

> 15. ARBITRATION
>
> The parties agree that, pursuant to the Federal Arbitration Act (the "FAA"), any and all disputes between Licensee and Licensor, or any of its parents, subsidiaries, employees or affiliates, including, but not limited to, disputes in connection with the performance of services by Licensee at the Club or in
> . . .
>
> **THE PARTIES UNDERSTAND AND ACKNOWLEDGE THAT BY SIGNING THIS AGREEMENT THEY SPECIFICALLY WAIVE ANY RIGHT TO PARTICIPATE IN ANY CLASS ACTION OR COLLECTIVE ACTION AS AGAINST THE OTHER PARTY** AND IF AT ANY TIME LICENSEE IS DEEMED A MEMBER OF ANY CLASS CREATED BY ANY COURT, ARBITRATOR OR ANY OTHER TRIBUNAL, SHE WILL "OPT OUT" OF SUCH CLASS AT THE FIRST OPPORTUNITY, AND SHOULD ANY THIRD PARTY PURSUE ANY CLAIMS ON HER BEHALF LICENSEE SHALL WAIVE HER RIGHTS TO ANY SUCH MONETARY RECOVERY.

Figueredo-Chavez ELA at 6–8 (emphasis in original removed) (emphasis added). Opt-in Plaintiff Sabogal's ELA contains an identical provision. *See* ("Sabogal ELA") (ECF No. 26-2) at 6–8. Opt-in Plaintiff Coronell's ELA, ("Coronell ELA") (ECF No. 26-3), contains a nearly identical provision, stating:

> 15. ARBITRATION
>
> The parties agree that this Agreement is subject to binding arbitration pursuant to the Federal Arbitration Act ("FAA"), and any disputes under this Agreement or otherwise arising out of your use of the Premises involving Licensor or its parents, subsidiaries, and/or affiliates will be governed and settled by an impartial independent appointed by the American Arbitration Association, Florida branch, and the determination of the arbitrator shall be final and binding
>
> . . .
>
> **<u>LICENSEE UNDERSTANDS AND ACKNOWLEDGES THAT BY SIGNING THIS AGREEMENT SHE SPECIFICALLY WAIVES ANY RIGHT TO PARTICIPATE IN ANY CLASS ACTION OR COLLECTIVE ACTION</u>** AND IF AT ANY TIME ENTERTAINER IS DEEMED A MEMBER OF ANY CLASS CREATED BY ANY COURT, ARBITRATOR OR OTHER TRIBUNAL IN ANY PROCEEDING, SHE WILL "OPT OUT" OF SUCH CLASS AT THE FIRST OPPORTUNITY, AND SHOULD ANY THIRD PARTY PURSUE ANY CLAIMS ON HER BEHALF ENTERTAINERS SHALL WAIVE HER RIGHTS TO ANY SUCH MONETARY RECOVERY.

Coronell ELA at 5–6 (emphasis added).

All the ELAs contain an identical severability clause in Section 16, entitled "Miscellaneous," stating:

> If any provision of this Agreement or the application therefore to any person or circumstance, for any reason and to the extent, [sic] be invalid or unenforceable, the remainder of this Agreement and the application of such provision to the other person or circumstance shall not be affected thereby, but rather shall be enforced to the greatest extent permitted by law.

Figueredo ELA at 8; Sabogal ELA at 8; Coronel ELA at 7.

On January 25, 2019, Plaintiff Figueredo-Chavez, Opt-in Plaintiff Sabogal, and eleven (11) other Entertainers ("claimants") filed arbitration demands with the AAA, alleging unpaid minimum wages, unpaid overtime, and tip disgorgement claims. (ECF No. 29-5). On January 31, 2021, the AAA informed the Parties it would apply the Commercial Arbitration Rules and the Employment Fee Schedule to this dispute. *Id*. at 1. In so doing, AAA determined that, for each case, the claimant would be responsible for $300.00 of that fee, and Defendant Miami Gardens

would be responsible for $1,900.00. *Id*. Thus, for all thirteen cases, claimants would owe $3,900.00 and Defendant Miami Gardens would owe $24,700.00, in total. *Id*.

On February 13, 2019, Defendant Miami Gardens objected to the fees, arguing that fees should be evenly split between the Parties, as provided in the ELAs. (ECF No. 29-6) at 3–4. During this time, the AAA held this matter in abeyance pending the outcome of a judicial intervention as to the fee dispute, which Defendant Miami Gardens stated that it intended to seek. (ECF No. 39-1) at 3. Despite the abeyance, the parties continued to communicate with the AAA regarding fee allocation and, on April 3, 2019, the AAA proposed an accommodation: the appointment of a special master to resolve the fee allocation dispute as a threshold issue, upon claimants' payment of $300.00 per case and Defendant Miami Gardens' payment of $1,100.00 per case—which is 50% of the filing fee. (ECF No. 39-1) at 1. There is no indication that Defendant Miami Gardens has ever sought judicial intervention as to the fee dispute issue before raising this issue in the instant case. *Id*.

On February 12, 2021, the AAA informed the Parties that "the filings remain open, and the AAA will continue to hold these matters in abeyance. We ask the parties to keep the AAA apprised of developments in any related court action, as these arbitration cases may not be stayed indefinitely." (ECF No. 38-1) at 1. Additionally, the AAA informed Defendant Miami Gardens that it would decline to administer "future arbitrations" involving Defendant Miami Gardens, but, it may consider accepting newly filed cases at its discretion in the event Defendant Miami Gardens informs the AAA of its intention to comply with the AAA's Employment/Workplace Fee Schedule. *Id*. Thus, claimant's arbitration demands were subsequently placed in abeyance by the AAA. *Id*.

On November 4, 2021, the Court ordered the Parties to show cause "as to whether the AAA is available as an arbitral forum for Plaintiff and any Opt-in Plaintiffs." (ECF No. 43). On November 9, 2021, Plaintiffs filed a letter from the AAA with the Court, stating: "[D]ue to Respondent's non-compliance with our Employment/Workplace Fee Schedule, the AAA declines to administer the above 13 matters and any future matters with Miami Gardens Square One, Inc. d/b/a Tootsie's Cabaret." (ECF No. 43-1).

On November 22, 2021, the Court denied Defendants' Motion to Compel Arbitration (ECF No. 29) because Defendants' refusal to submit the fee-splitting issue to the AAA rendered the AAA unavailable as an arbitral forum. (ECF No. 46) at 10.

Now, in the instant Motion, Plaintiff moves to conditionally certify a collective action comprised of similarly situated Entertainers pursuant to § 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, and to have the Court "authorize notice to all former and current Entertainers who worked at Tootsie's Cabaret at any time within the three years prior to the Court's ruling on this Motion[.]" Mot. at 1, 3.

## II.   LEGAL STANDARD

The FLSA authorizes collective actions against employers for unpaid minimum wage and overtime compensation. 29 U.S.C. § 216(b). Section 216(b) provides that an action "may be maintained . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." *Id.* A plaintiff may bring a collective action on behalf of similarly-situated persons subject to the requirements that prospective plaintiffs file a written consent in the court where the action is brought. *Id.*; *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1216 (11th Cir. 2001). A collective action brought under the FLSA can include only those plaintiffs who affirmatively opt-in to the action by filing their consent in writing. § 216(b).

Courts in the Eleventh Circuit generally use a two-tiered procedure for certifying FLSA collective actions. *See Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1243 n.2 (11th Cir. 2003) (citation omitted). The first tier—referred to as the notice stage—involves the conditional certification of the class and notice to potential class members upon motion by the plaintiff. *See id.* (quoting *Hipp*, 252 F.3d at 1218). The burden is on the plaintiff to show that there is a "reasonable basis" for the claim that there are other similarly situated employees who desire to opt-in to the case. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259–61 (11th Cir. 2008). The standard by which a court determines whether plaintiffs are similarly situated at this stage is "fairly lenient [], and typically results in 'conditional certification' of a representative class." *Cameron-Grant*, 347 F.3d at 1243 n.2.

However, a class is not officially certified until the Court conducts the second-tier analysis. Upon a motion for decertification by the defendant after discovery is complete, the Court re-examines the question of certification. *Id.* Then, the Court determines whether there are similarly situated employees such that the action should proceed to trial as a representative action. *Id.* If the claimants are not similarly situated, the Court decertifies the class and the opt-in plaintiffs are dismissed without prejudice, while the original plaintiffs proceed to trial on their individual claims. *Id.*

### III. DISCUSSION

Plaintiff argues that the Court should conditionally certify collective action in this case because all Entertainers worked under similar conditions as Plaintiff and Opt-in Plaintiffs. Mot. at 6. Plaintiff contends that the standards governing conditional certification are lenient, and the Court should grant conditional certification as have many other courts in the context of wage claims of adult Entertainers. *Id*. at 6–8 (collecting cases). Plaintiff contends that whether putative

class members have signed a dispute resolution agreement is irrelevant to conditional certification. *Id*. at 10–12. Finally, Plaintiff raises various arguments as to the content, scope, and manner of any notice that will be provided to putative class members. *Id*. at 12–18.

In response, Defendants argue that the arbitration clauses and collective action waivers in Plaintiffs' ELAs preclude both conditional and class action certification. Resp. at 6–7. Additionally, Defendants contend that Plaintiff has failed to meet her burden to show others are "similarly situated" and are, therefore, entitled to notice. *Id*. at 8–11. Relatedly, Defendants contend that the affidavits submitted in support of Plaintiff's Motion are deficient for various reasons. *Id*. Defendants also raise several objections as to the scope of the class and the content of any notice. *Id*. at 12–13.

In reply, Plaintiff argues that she has exceeded the lenient burden for conditional class certification under the FLSA and that Defendants' evidentiary objections as to Plaintiff's affidavits are without merit. Reply at 3–7. Plaintiff also contends that there is no basis to enforce the class/collective action waivers contained within the ELAs' arbitration provision because the arbitral forum is uniformly unavailable for all Entertainers. *Id*. at 8. Relatedly, Plaintiff argues that outside the context of arbitration, there is no authority for the assertion that an employee can waive the ability to bring FLSA collective action while maintaining the ability to pursue an individual action in court. *Id*. at 10 (citing *Simpkins v. Pulte Home Corp.*, No. 608-CV-130-ORL-19DAB, 2008 WL 3927275, at *10 (M.D. Fla. Aug. 21, 2008), *clarified on denial of reconsideration*, No. 608CV130ORL98DAB, 2008 WL 11474926 (M.D. Fla. Sept. 24, 2008)). Finally, Plaintiff argues that Defendants' objections as to the form of notice must be overruled because (1) the language preferred by Defendants would confuse potential putative class

7

members, and (2) Defendants' other objections are unspecific and fail to explain why Plaintiff's proposed language is inadequate. *Id*. at 9–10.

The class action waivers included within the ELAs' arbitration provisions present a threshold question as to conditional class certification in this case. For the reasons discussed below, the Court finds that the class action waivers preclude conditional certification and the Court, therefore, need not address Plaintiff's other arguments.

Under § 16(b) of the FLSA, codified at 29 U.S.C. § 216(b), an employee may bring an action for violations of the FLSA "for and in behalf of himself or themselves and other employees similarly situated." An action brought by a plaintiff employee pursuant to § 16(b) "does not become a 'collective' action unless other plaintiffs affirmatively opt into the class by giving written and filed consent." *Walthour v. Chipio Windshield Repair*, LLC, 745 F.3d 1326, 1332 (11th Cir. 2014) (quoting *Cameron–Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1249 (11th Cir. 2003)).

In *Walthour*, the Eleventh Circuit addressed the "question of whether an arbitration agreement, which waives an employee's ability to bring a collective action under the Fair Labor Standards Act, is enforceable under the Federal Arbitration Act." 745 F.3d at 1327. There, the Eleventh Circuit held that an arbitration clause that waives collective action is enforceable under the FAA for several reasons, including because "the FLSA contains no explicit provision precluding arbitration or a waiver of the right to a collective action under § 16(b)." *Id*. at 1334. Relatedly, the Eleventh Circuit stated that "after reviewing the purposes of the FLSA, we conclude that the enforcement of collective action waivers in arbitration agreements is also not inconsistent with the FLSA." *Id*. at 1335.

8

Here, the Court is presented with a slightly different question because, in this case, the Court has determined that the arbitration agreement is not enforceable. (ECF No. 46). Thus, the issue now before the Court is whether a class action waiver included within an arbitration clause is operative, even where an agreement to arbitrate is not enforceable.

Although *Walthour* was decided in the context of an enforceable arbitration agreement, it is is nonetheless instructive on the issue presented in this case. In *Martins v. Flowers Foods, Inc.*, a court in the Middle District of Florida found that, under *Walthour*, "the FLSA does not prohibit enforcement of the collective-action waivers" even where an arbitration agreement is unenforceable. 463 F. Supp. 3d 1290, 1300 (M.D. Fla. 2020), *vacated on other grounds*, 852 F. App'x 519 (11th Cir. 2021). In doing so, the Honorable Mary Scriven noted that other courts have explained that "*Walthour* 'found waivers enforceable not because of the strong policy in favor of the FAA, but rather . . . because the FLSA's text, scheme, and legislative history reveal that the FLSA 'does not set forth a non-waivable substantive right to a collective action.'" *Id*. at 1300–01 (quoting *Benedict v. Hewlett-Packard Co*., No. 13-CV-00119-BLF, 2016 WL 1213985, at *5 (N.D. Cal. Mar. 29, 2016) (quoting *Walthour*, 745 F.3d at 1335)); *Feamster v. Compucom Sys., Inc*., No. 7:15-CV-00564, 2016 WL 722190, at *4 (W.D. Va. Feb. 19, 2016) ("Even though the employment agreements in *Walthour* contained arbitration clauses, the court is constrained to conclude that the Eleventh Circuit's findings as to the rights afforded in the FLSA and the validity of collective action waivers are applicable in this case, even though CompuCom's agreements lack arbitration clauses.")). The Court agrees with Defendants that although *Walthour* was decided in the context of an enforceable arbitration agreement, it equally stands for the proposition that the "text of FLSA § 16(b) does not set forth a non-waivable substantive right to a collective action." 745 F.3d at 1335. Therefore, the Court concludes that the collective action waiver must be

enforced in this case. *Fla. Polk Cty. v. Prison Health Servs., Inc.*, 170 F.3d 1081, 1084 (11th Cir. 1999) ("It is a venerable principle of contract law that the provisions of a contract should be construed so as to give every provision meaning.").

The Court finds the cases relied upon by Plaintiff unconvincing as to the narrow issue before the Court. In *Vine v. PLS Fin. Servs., Inc.*, the Fifth Circuit stated:

> We agree with the district court that "the most plausible way to interpret a class action waiver in the middle of an arbitration provision is as part of the explanation of the rules, rights, and procedures that apply if a dispute is arbitrated—'*not* as an independently effective waiver of the right to pursue a class action outside the arbitration context.'"

807 F. App'x 320, 328 (5th Cir. 2020) (quoting *Meyer v. Kalanick*, 185 F. Supp. 3d 448, 454 (S.D.N.Y. 2016)). The *Vine* Court continued, "[t]he Borrowers gave up their right to participate in a class action by virtue of their agreement to resolve disputes exclusively through individual arbitration. But once PLS waived the arbitration provision, the Borrowers were free to select another form of dispute resolution, including a class action." *Id*.

The Court finds the reasoning in *Vine*, which is not binding precedent upon this Court, to be unpersuasive in light of the Supreme Court's decision in *Epic Systems Corp. v. Lewis* and the Eleventh Circuit's decision in *Walthour*.

In *Epic*, U.S. Supreme Court Justice Neil M. Gorsuch, writing for the majority, rejected the dissenting Justices' view that a right to collective action should be read into the National Labor Relations Act ("NLRA"), which would render arbitration clauses unenforceable, stating:

> Ultimately, the dissent retreats to policy arguments. It argues that we should read a class and collective action right into the NLRA to promote the enforcement of wage and hour laws. *Post*, at 1646–1649. But it's altogether unclear why the dissent expects to find such a right in the NLRA rather than in statutes like the FLSA that actually regulate wages and hours. Or why we should read the NLRA as mandating the availability of class or collective actions when the FLSA expressly authorizes them yet allows parties to contract for bilateral arbitration instead. 29 U.S.C. § 216(b); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. at 32. While

>the dissent is no doubt right that class actions can enhance enforcement by "spread[ing] the costs of litigation," *post*, at 1637, **it's also well known that they can unfairly "plac[e] pressure on the defendant to settle even unmeritorious claims,"** *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 445, n. 3, 130 S. Ct. 1431, 176 L.Ed.2d 311 (2010) (GINSBURG, J., dissenting). **The respective merits of class actions and private arbitration as means of enforcing the law are questions constitutionally entrusted not to the courts to decide but to the policymakers in the political branches where those questions remain hotly contested.** Just recently, for example, one federal agency banned individualized arbitration agreements it blamed for underenforcement of certain laws, only to see Congress respond by immediately repealing that rule. *See* 82 Fed. Reg. 33210 (2017) (cited *post*, at 1647, n. 15); Pub. L. 115–74, 131 Stat. 1243. This Court is not free to substitute its preferred economic policies for those chosen by the people's representatives. *That*, we had always understood, was *Lochner*'s sin.

138 S. Ct. at 1632 (internal citations reformatted) (emphasis added).

Justice Gorsuch's recognition that a collective action waiver in an employment agreement can serve to mitigate "pressure on the defendant to settle even unmeritorious claims" demonstrates that a collective action waiver in an employment agreement does not serve only to facilitate an agreement to arbitrate. Rather, a waiver of collective action also carries independent significance, outside the context of arbitration, because it protects defendants from potentially unfair pressure "to settle even unmeritorious claims." *Id*. Consequently, the unavailability of an arbitral forum must not render a collective action waiver unenforceable. To find otherwise would be to fail to recognize the benefits of collective action waivers that were identified by Justice Gorsuch in *Epic*. For this reason, the Court respectfully disagrees with the holding in *Vine* that a class action waiver within an arbitration clause only applies if a dispute is arbitrated. 807 F. App'x at 328.

Moreover, to find the collective action waiver unenforceable would be to do precisely what the Supreme Court refused to do in *Epic*, that is: to read a non-waivable right to collective action into a statute where none exists. *Epic*, 138 S. Ct. at 1632. In *Walthour*, the Eleventh Circuit noted that the Supreme Court has enforced collective action waivers even where federal statutes

11

expressly permit collective action. 745 F.3d at 1334 (citing *Gilmer*, 500 U.S. at 32). Additionally, the *Walthour* Court noted that the Supreme Court has enforced class action waivers where an individual plaintiff's right to pursue its own statutory remedies is not impeded—which is the circumstance in this case, where Plaintiff will still be able to vindicate her rights under the FLSA without a class action. 745 F.3d at 1334 (citing *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013)). The Eleventh Circuit held that "based on these Supreme Court decisions read together, we conclude that the text of FLSA § 16(b) does not set forth a non-waivable substantive right to a collective action." *Walthour*, 745 F.3d at 1335 (citing *Gilmer*, 500 U.S. at 32; *Italian Colors Rest.*, 133 S.Ct. at 2311). Although *Walthour* was decided in the context of reviewing the enforceability of an arbitration clause, the presence of an arbitration clause in a contract does not function to alter the text of the FLSA. While it may be the preference of some that class action waivers should be forbidden in suits arising under the FLSA, it is not the place of a federal court to insert that preference into a statute when there is no basis to do so. *See Walthour*, 745 F.3d at 1334 ("[T]he FLSA contains no explicit provision precluding arbitration or a waiver of the right to a collective action under § 16(b)."); *see also Epic* at 1632 ("The respective merits of class actions and private arbitration as means of enforcing the law are questions constitutionally entrusted not to the courts to decide but to the policymakers in the political branches where those questions remain hotly contested.").

The Court finds Plaintiff's reliance on *Simpkins* to be unconvincing. In *Simpkins*, a court in the Middle District of Florida stated that "outside the context of arbitration, there is no legal authority for [the defendant's] assertion that an employee can waive the ability to bring an FLSA collective action while maintaining the ability to pursue an individual action in court." 2008 WL 3927275, at *10. However, *Simpkins* was decided in 2008 and, therefore, did not have the benefit

12

of *Epic* and *Walthour*—each of which have a significant bearing on this issue for the reasons discussed above.  *Simpkins* did not consider that class action waivers have independent significance, beyond their role in facilitating arbitration.  Nor did *Simpkins* consider that there is no textual basis for precluding a waiver of collective action under § 16(b) of the FLSA.

Finally, each of the ELAs contains an identical severability clause that requires the Court to apply the ELAs "to the greatest extent permitted by law," even where one provision is found to be invalid or unenforceable.  *See* Figueredo ELA at 8; Sabogal ELA at 8; Coronel ELA at 7. Although the collective action waivers are included within sections of each ELA that relate to arbitration, the collective action waivers do not serve solely to facilitate arbitration and, therefore, must be severed and enforced pursuant to the severability provision in each ELA.[1]  *See Polk Cty.*, 170 F.3d at 1084 ("It is a venerable principle of contract law that the provisions of a contract should be construed so as to give every provision meaning.").

## IV.     CONCLUSION

Accordingly, UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that Plaintiff's Expedited Motion to Conditionally Certify Collective Action and Facilitate Notice to Putative Collective Members (ECF No. 22) is DENIED.

DONE AND ORDERED in Chambers at Miami, Florida, this *3rd* day of December, 2021.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

c: All counsel of record

---

[1] In *Vine*, the Fifth Circuit did not address issue of whether a collective action waiver can be severed from an agreement to arbitrate. *See* 807 F. App'x at 328–330.  The Court finds this to be an important point of distinction between *Vine* and the case at bar.