UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CIVIL ACTION NO: 1:21-cv-21733-KMM

MAYTE FIGUEREDO-CHAVEZ,
individually and on Behalf of All
Others Similarly Situated,

    Plaintiffs,

vs.

RCI HOSPITALITY HOLDINGS, INC.,
MIAMI GARDENS SQUARE ONE, INC.,
and ERIC LANGAN, individually,

    Defendants
_____/

**PLAINTIFF'S MOTION FOR RECONSIDERATION AND
INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

Plaintiff, MAYTE FIGUEREDO-CHAVEZ, by and through her undersigned counsel, respectfully moves the Court for reconsideration of its Order denying Plaintiff's Expedited Motion to Conditionally Certify Collective Action and Facilitate Notice to Putative Collective Members [D.E. 49] (EXHIBIT A). Plaintiff seeks reconsideration of the Order solely as it relates to the Court's finding that the collective action waivers (or acknowledgements and understanding) contained within the Entertainer License Agreement's ("ELA") section on "Arbitration" were independent and enforceable agreements notwithstanding the unenforceability of the underlying agreement to arbitrate.[1] In support of the motion, Plaintiff states as follows:

---

[1] For purposes of her Motion, Plaintiff assumes that a stand-alone collective action waiver is enforceable under the FLSA.

1

## ARGUMENT

The Court erred in its determination that the ELA contained a collective action waiver that was independent of the underlying agreement to arbitrate. Here, the Court determined that the collective action waivers were severable and enforceable because the waivers "do not serve solely to facilitate arbitration," and cited *Fla. Polk Cty. v. Prison Health Servs., Inc.*, 170 F.3d 1081, 1084 (11th Cir. 1999) for the proposition that "it is a venerable principle of contract law that the provisions of a contract should be construed so as to give every provision meaning." As explained below, the Court's holding was clear error in contravention of Florida law. *See Kozyrev v. Ponomarenko*, No. 19-CV-60497, 2020 WL 6135050, at *3 (S.D. Fla. Oct. 19, 2020) ("The third basis for reconsideration, clear error or manifest injustice 'occurs where the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension.'") (quoting *Campero USA Corp. v. ADS Foodservice, LLC*, 916 F. Supp. 2d 1284, 1292-93 (S.D. Fla. 2012)).

Here, all of ELAs contain a virtually identical Arbitration provision, composed of six interrelated paragraphs, which bears the caption "**15. ARBITRATION**." *See* ECF No. 26-2 (emphasis in original). The first paragraph of the Arbitration provision contains the parties' agreement to arbitrate. *Id*. The following five paragraphs of the Arbitration provision set forth the procedures, rules and consequences of arbitration: (a) the second paragraph reiterates that the parties waive the right to litigate claims in court in favor of arbitration, provides for representation by counsel in the arbitration, provides for discovery procedures applicable in arbitration, and contains the delegation clause; (b) the third paragraph purports to limit the authority of the arbitrator; (c) the fourth paragraph purports to govern attorneys fees', costs and

the statute of limitations in the context of the arbitration; (d) the fifth paragraph states that the parties "understand and acknowledge" that they are waiving the right to "participate" in a class or collective action[2]; and (e) the sixth paragraph memorializes each dancer's acknowledgment that she has read and understands the Arbitration agreement or "Section 15." *Id*.  The issue presented here is whether the parties agreed to any of the remaining five paragraphs outside of the context of the agreement to arbitrate.  Construing the contract pursuant to Florida law, it is clear that they did not.

Under Florida law,[3] the determination of whether language within an offending provision is severable from the rest "depends upon the intention of the parties… which may be determined by a fair construction of the terms and provision of the contract itself, and by the subject matter to which it has reference." *Local No. 234 v. Henley & Beckwith*, 66 So.2d 818, 822 (Fla.1953) (citations and quotation marks omitted); *Wilderness Country Club P'ship, Ltd. v. Groves*, 458 So. 2d 769, 772 (Fla. 2d DCA 1984) ("Where one contractual provision is void, the balance of the contract is also void unless the balance fairly reflects the original intent of the parties to the contract.").  Here, the Court diverged from Florida precedent when it determined that the parties intended there to be a collective action waiver, independent of arbitration.

Consistent with binding Florida precedent regarding contract construction, there is nothing in the ELA to suggest that the parties agreed to waive collective actions outside the context of arbitration.  The fact that the collective action waiver is framed as an acknowledgment and understanding, and is located within the over two-page section entirely on Arbitration,

---

[2] There is no collective waiver provision outside of the context of the Arbitration provision (i.e. no stand-alone collective waiver).
[3] The ELA contains a choice of law provision, in a separately-numbered provision titled "**LEGAL ACTION**" that states that the ELA shall be governed and construed in accordance with the laws of the State of Florida.  *See* ELA, ¶ 14.

further reinforces this conclusion.[4]  *See Frank v. Bowers*, 116 So.3d 1240, 1249 (Fla. 2013) (finding a limitation of damages clause was not an independent agreement that could be severed from an arbitration agreement because the "clause appears as a subheading under the Arbitration provision," and "[b]ecause of this format, it does not appear that either party intended for the Limitation of Damages provision to be separated from the Arbitration provision.").  In other words, as in *Vine*, "the most plausible way to interpret a class [or collective] action waiver in the middle of [the section in the ELA on arbitration] is as part of the explanation of the rules, rights, and procedures that apply if a dispute is arbitrated—'*not* as an independently effective waiver of the right to pursue a class action outside the arbitration context.'" *Vine v. PLS Financial Services, Inc.*, 807 Fed App'x 320, 328 (5th Cir. 2020) (quoting *Meyer v. Kalanick*, 185 F.Supp.3d 448, 454 (S.D.N.Y. 2016)) (emphasis in original).

The Court also conflated Plaintiff's argument that the collective action waivers were "part and parcel of the obligation to arbitrate, rather than an independent provision" [D.E. 30 at p. 3] with the issue of whether *any* collective action waiver is meant to "solely to facilitate arbitration." D.E. 49 at p. 2.  The former is a matter of contract interpretation based on the language of the ELA, while the latter is a policy consideration that could theoretically support a stand-alone collective action waiver to the extent one existed.

Instead of giving effect to the intention of the parties based on the language and structure of the ELA, the Court relied on the maxim that "the provisions of a contract should be construed so as to give every provision meaning." ECF No. 49 at 13 (quoting *Polk City*, 170 F.3d at 1084).

---

[4] The ELA contains 16 other numbered provisions, other than the Arbitration provision. Tootsie's could have included a class or collective waiver as a separately numbered stand-alone provision in the ELA, if the parties had intended the class action waiver to apply outside the context of arbitration.  Tootsie's could have also have affirmatively stated that the class or collective waiver would apply even if the claims are not arbitrated. They chose to do neither.

This compounded the clear error because the parties' understanding and acknowledgment that they had waived the right to participate in a class and collective action *already had meaning* in the context of the agreement to arbitrate. Because each paragraph of the Arbitration provision had meaning before severance, the Court was precluded under Florida law from assigning a new meaning to every sentence in the Arbitration provision after the offending paragraphs were severed. *See Tobin v. Michigan Mut. Ins. Co.*, 398 F.3d 1267, 1273 n.8 (11th Cir. 2005) (citing Florida law for the "general principle that a court looks to the whole agreement when interpreting a contract, and not just to one particular provision in isolation."); *Arthur Rutenberg Corp. v. Pasin*, 506 So. 2d 33, 34-35 (Fla. 4th DCA 1987) ("Agreements must receive a reasonable interpretation, according to the intention of the parties at the time of executing them . . . .")(quoting *James v. Gulf Life Ins. Co.,* 66 So.2d 62 (Fla.1953). Put differently, the Court was without authority to pick and choose which paragraphs of the Arbitration provision should go and which should be given new meaning as if the agreement to arbitrate never existed.

As illustrated below, the Court rewrote the Arbitration provision and created a stand-alone class and collective waiver within a section of the ELA that the parties intended to apply exclusively in the context of arbitration:

> **15. ~~ARBITRATION~~CLASS AND COLLECTIVE WAIVER**
>
> **THE PARTIES ~~UNDERSTAND AND ACKNOWLEDGE THAT BY SIGNING THIS AGREEMENT THEY SPECIFICALLY~~ *AGREE TO* WAIVE ANY RIGHT TO PARTICIPATE IN ANY CLASS ACTION OR COLLECTIVE ACTION AS AGAINST THE OTHER PARTY AND IF AT ANY TIME LICENSEE IS DEEMED A MEMBER OF ANY CLASS CREATED BY ANY COURT, ARBITRATOR OR ANY OTHER TRIBUNAL, SHE WILL "OPT OUT" OF SUCH CLASS AT THE FIRST OPPORTUNITY, AND SHOULD ANY THIRD PARTY PURSUE ANY CLAIMS ON HER BEHALF LICENSEE SHALL WAIVE HER RIGHTS TO ANY SUCH MONETARY RECOVERY.**

The ELA's severability clause does not permit such reconstruction of the terms of ELA. *See Shotts v. OP Winter Haven, Inc.*, 86 So. 3d 456, 477 (Fla. 2011) ("While the Agreement did contain a severability clause, the clause allows provisions, not portions of provisions, of the Agreement to be severed."); *Zucker for BankUnited Fin. Corp. v. U.S. Specialty Ins. Co.*, 856 F.3d 1343, 1348 (11th Cir. 2017) ("'Courts may not rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties.'") (quoting *Taurus Holdings, Inc. v. U.S. Fidelity & Guar. Co.*, 913 So.2d 528, 532 (Fla. 2005)); *Woodward v. Morell*, 319 So. 3d 47, 54 (Fla. 4th DCA 2021) ("'When contractual language is clear and unambiguous, courts cannot indulge in construction or interpretation of its plain meaning' and impose on the contractual parties 'rights and duties' that the parties elected to omit.") (quoting *BMW of N. Am., Inc. v. Krathen*, 471 So. 2d 585, 587 (Fla. 4th DCA 1985); *Underwater Eng'g Servs., Inc. v. Utility Bd. of Key West*, 194 So. 3d 437, 444 (Fla. 3d DCA 2016) ("[C]ourts are powerless to rewrite a contractual provision to make it more fair or equitable for one of the parties.");[5] *Pol v. Pol,* 705 So. 2d 51, 53 (Fla. 3d DCA 1997) ("It is well established that a court cannot rewrite the clear and unambiguous terms of a voluntary contract. Instead, the plain meaning of the actual language used by the parties controls.") (citations omitted). In other words, enforcing an agreement to the "greatest extent permitted by law" did not give the Court the authority to rewrite the agreement.

Finally, the Court noted that "in *Vine*, the Fifth Circuit did not address issue of whether a collective action waiver can be severed from an agreement to arbitrate" and considered this to be "an important point of distinction between *Vine* and the case at bar." D.E. 49 at p. 13 n.1. But

---

[5] By giving Tootsie's the benefit of a class and collective action waiver outside the context of arbitration, the Court is not only redrafting the agreement, but also rewarding Tootsie's for its bad faith refusal to arbitrate Plaintiff's claims. *See* D.E. 46.

this notion is misplaced because the issue of whether a class waiver was part of an agreement to arbitrate, or an independent agreement, was the central issue in *Vine*. *See Vine v. PLS Financial Services, Inc.*, 331 F.R.D. 325 (E.D. Tex. 2019) (noting that the "question concerns the interpretation of the Arbitration Provision based on general contract principles"). Moreover, in *Vine*, the arbitration agreement contained a severability provision that was even broader than the one here in the ELA. *See Vine v. PLS Financial Services, Inc., et al.*, 16-cv-31-PRM, ECF No. 19-1, Page 5 of 7 (W.D. Tex. Mar. 23, 2016) (attached as EXHIBIT B) ("If any provision of this Agreement is determined to be invalid or unenforceable, such provision shall be reformed if practicable so as to achieve its intended purpose(s) and shall not in any way affect the remaining provisions of this Agreement."). While the Court correctly noted that *Vine* is not binding, it is persuasive inasmuch as Texas law—the law on which *Vine* was founded—is consistent with Florida law, and both require that a matter of contract interpretation requires a court to consider the language of the agreement to determine the intention of the parties. *See Local No. 234*, 66 So.2d at 822; *SAS Inst., Inc. v. Breitenfeld*, 167 S.W.3d 840, 841 (Tex. 2005) ("a court interprets a contract by ascertaining the true objective intentions of the parties, based on the contract language.").

      Here, the Court ultimately held that an independent collective waiver existed. However, it did so only after it rewrote the ELA and assigned new meaning to the parties' class and collection action waiver embedded and intertwined in the Arbitration provision. Well-settled Florida law precludes such redrafting. The Court's failure to adhere to Florida law and reliance on policy considerations to come to this result was clear error.

## CONCLUSION

Consistent with binding Florida authority, Plaintiff respectfully requests that the Court grant Plaintiff's motion for reconsideration and find that that the collective waiver acknowledgments in the ELAs are not independent agreements that remain in the ELA after the underlying agreement to arbitrate is removed.

## CERTIFICATE OF GOOD FAITH PURSUANT TO L.R. 7.1

Plaintiff's counsel conferred with Defendants' counsel pursuant to the local rules in a good faith effort to resolve this Motion prior to its filing, and is authorized to represent that Defendants oppose the relief sought by this Motion.

Dated: December 16, 2021

Respectfully submitted,

*/s/ Andrew R. Frisch*
Andrew R. Frisch
FL Bar No. 27777
Bryan Arbeit
FL Bar No. 1010329
Morgan & Morgan, P.A.
8151 Peters Road, Suite 400s
Plantation, FL 33324
Tel: (954) WORKERS
Fax: (954) 327-3013
E-mail: afrisch@forthepeople.com
E-mail: barbeit@forthepeople.com

Brett R. Cohen, Esq.
Pro Hac Vice
LEEDS BROWN LAW, P.C.
One Old Country Road, Suite 347
Carle Place, NY 11514
Tel: (516) 873-9550
bcohen@leedsbrownlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 16, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF filing system, which I understand will send notice of same to all counsel and parties of record.

*/s/ Andrew Frisch*
Andrew R. Frisch